UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRICO TAREK FACTORY,

                        Plaintiff,            **REPORT AND RECOMMENDATION**

   -against-                              **24-CV-3731 (JMA) (ST)**

JETAX INC. AND JEFFERY TAXIER,

                        Defendants.
-------------------------------------------------------------X

MASTER FOR CLOTHES MANUFACTURING
AND EMBROIDERY,

                        Plaintiff,            ***SUA SPONTE* MEMORANDUM AND ORDER**[1]

   -against-                              **24-CV-2409 (ST)**

JETAX INC. AND JEFFERY TAXIER,

                        Defendants.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Before the Court is a joint motion by Trico Tarek Factory ("Plaintiff"), together with Jeffery Taxier ("Taxier"), the individual defendant, to consolidate this case with two other cases proceeding in this District, as well as a motion for default judgment brought by Plaintiff against Jetax Inc. ("Jetax," and, together with Taxier, "Defendants"), the corporate defendant, for failure to answer or otherwise respond to the Complaint. Plaintiff, a clothing manufacturing company, brought this action asserting various counts of breach of contract and unjust enrichment against

---

[1] This opinion primarily addresses the matter of *Trico Tarek Factory v. Jetax Inc.*, 24-CV-3731-JMA-ST (E.D.N.Y.). However, for reasons discussed herein, an order will also issue in the matter of *Master for Clothes Manufacturing and Embroidery v. Jetax Inc.*, 24-CV-2409-ST (E.D.N.Y.), which is assigned directly to this Court pursuant to the Eastern District's pilot program for Direct Assignment of Civil Cases to Magistrate Judges. *See* E.D.N.Y. Administrative Order No. 2023-23. This Court is assigned to all three matters for which the parties seek consolidation, but only one of the three is directly assigned pursuant to the pilot program. The other two actions are assigned to this Court as well as two different District Courts.

Defendants, a clothing retailer and its principal, alleging that Defendants placed several orders for clothes but failed to pay for the corresponding invoices when they became due. The motion to consolidate seeks to merge this matter with two cases filed by two other clothing manufacturers, who also engaged in a series of transactions with Defendants whereby Defendants are alleged to have placed orders for items, were shipped the items, but failed to pay for them. The two appearing parties in the instant case, along with the plaintiffs in the two other cases, jointly filed identical letter motions to consolidate in all three cases, which are assigned to different courts in this District.

With respect to the motion for default judgment, Plaintiff filed this action on May 23, 2024, and, while Taxier has appeared and filed an Answer, Jetax has failed to appear, and the time to do so has elapsed. Plaintiff thus requested a certificate of default, which was entered by the Clerk of Court on September 20, 2024. The instant motion for default judgment followed.

On April 22, 2025, the motions to consolidate and for default judgment in the instant case were referred to this Court for a report and recommendation by the Honorable Joan M. Azrack. For the reasons set forth below, the Court respectfully recommends that the motion to consolidate be DENIED or, in the alternative, GRANTED IN PART for purposes of reassignment to one District Court, and that the motion for default judgment be DENIED WITHOUT PREJUDICE, with leave to refile a procedurally compliant motion once litigation against the appearing defendant has concluded.

## BACKGROUND

While this report and recommendation primarily pertains to the matter of *Trico Tarek Factory v. Jetax Inc.*, 24-CV-3731-JMA-ST (E.D.N.Y.), the procedural history of all three cases that the parties seek to consolidate is relevant to that motion. Moreover, while the parties seek to consolidate three open cases, a fourth case, which has since been dismissed for lack of subject

matter jurisdiction, was actually the first case to be filed against these Defendants alleging that they failed to pay for clothing orders, and the procedural history in that case is also relevant to the discussion herein. *See HGM v. Jetax Inc.*, 24-CV-2135-NJC-ARL (E.D.N.Y.). Thus, the Court will set forth the background of all four cases, proceeding chronologically, beginning with *HGM*, and continuing with *Lakers for Garmets and Made Clothes v. Jetax Inc.*, 24-CV-2226-LDH-ST (E.D.N.Y.), *Master for Clothes Manufacturing and Embroidery v. Jetax Inc.*, 24-CV-2409-ST (E.D.N.Y.), and finally *Trico Tarek Factory v. Jetax Inc.*, 24-CV-3731-JMA-ST (E.D.N.Y.).

## I.    *HGM v. Jetax Inc.*, **24-CV-2135-NJC-ARL (E.D.N.Y.).**[2]

*HGM v. Jetax Inc.* was originally filed in the Southern District of New York, and was transferred to this District on March 25, 2024. In that case, Plaintiff HGM alleged that the defendants, Jetax Inc. and Jeffery Taxier, placed nine orders to purchase clothes from HGM. *HGM*, Compl. ¶¶ 11, 15, 19, 23, 27, 31, 35, 39, 43, ECF No. 1. Plaintiff HGM alleged that the items in question were shipped and received, but that the defendants failed to pay the resulting invoices either in whole or in part. *Id.* ¶¶ 12–13, 16–17, 20–21, 24–25, 28–29, 32–33, 36–37, 40–41, 44–45. The plaintiff thus alleged that the defendants breached the pertinent contracts and brought nine counts of breach of contract and, in the alternative, unjust enrichment.[3] *Id.* ¶¶ 14, 22, 26, 30, 34, 38, 42, 45, 47–55.

The complaint purportedly invoked diversity jurisdiction as the basis for the Court's subject matter jurisdiction, alleging that the plaintiff, an Egyptian clothing manufacturing company, was entirely diverse from the two defendants, on the grounds that the corporate

---

[2] The Court's citations to documents filed in each of the four cases will presume familiarity with the docket numbers set forth in the headings for each section.

[3] HGM's complaint erroneously consolidates nine counts for breach of contract and nine counts for unjust enrichment into one singular count for each, despite alleging that the parties entered into nine separate contracts, and that there were nine separate breaches. *See HGM*, Compl. ¶¶ 47–55, ECF No. 1. The complaints in *Lakers for Garmets*, *Master for Clothes*, and *Trico Tarek Factory* do the same. The Court's discussion corrects this error.

defendant was incorporated in New York and the company's principal was a resident of New York. *Id.* ¶¶ 1–3, 5–7. The complaint noted that federal question jurisdiction can be a permissible basis for subject matter jurisdiction in federal court, but made no attempt to allege that the causes of action therein presented federal questions. *Id.* ¶¶ 4–7. Instead, the unjust enrichment counts listed the elements required to bring a claim for unjust enrichment under New York law, while the breach of contract counts did not mention any body of law. *Id.* ¶¶ 47–55.

The action proceeded, with Taxier appearing and filing an answer, and Jetax failing to appear, resulting in an entry of default. *HGM*, ECF No. 19; ECF No. 23; ECF No. 24. On September 30, 2024, Taxier filed a motion to consolidate *HGM* with *Lakers for Garmets*, *Master for Clothes*, and *Trico Tarek Factory*, the latter three of which had been filed in the interim. *HGM*, ECF No. 25. Plaintiff HGM filed an opposition to the motion on October 10, 2024, and Taxier filed a reply on October 18, 2024. *HGM*, ECF No. 29; ECF No. 30. That same day, HGM filed a sur-reply, withdrawing its opposition to consolidation and consenting thereto. *HGM*, ECF No. 31.

Thereafter, on October 29, 2024, the Honorable Nusrat J. Choudhury issued an Order to Show Cause, ordering HGM to show cause as to why the matter should not be dismissed for lack of subject matter jurisdiction, on the grounds that HGM's complaint alleged two state law causes of action but failed to properly allege the citizenship of the parties and, in turn, diversity. *HGM*, Order to Show Cause, ECF No. 32. On November 12, 2024, HGM filed a response to the Order, again invoking diversity jurisdiction and providing additional facts regarding the parties' citizenship in an attempt to cure this deficiency. *HGM*, ECF No. 33. These factual submissions were again inadequate to establish diversity, and, on November 23, 2024, the action was dismissed without prejudice for lack thereof. *HGM*, Memorandum & Order, ECF No. 34. The motion to consolidate and a pending motion for default judgment against Jetax were both denied as moot. *Id.*

- 4 -

## II.    *Lakers for Garmets and Made Clothes v. Jetax Inc.*, 24-CV-2226-LDH-ST (E.D.N.Y.).

*Lakers for Garmets* was originally filed in the Southern District of New York and, upon transfer to this District, was assigned to the Honorable LaShann DeArcy Hall and this Court. In that action, Plaintiff Lakers for Garmets[4] alleges that the defendants, Jetax Inc. and Jeffery Taxier, placed seven orders for various clothing items, which were shipped in June, July, August, and September of 2021, and January and March of 2022. *Lakers for Garmets*, Compl. ¶¶ 11–12, 15–16, 19–20, 23–24, 27–28, 31–32, 35–36, ECF No. 1. Lakers for Garmets alleges that, despite receiving these items, the defendants failed to pay for the orders either in whole or in part, thus breaching the seven contracts. *Id.* ¶¶ 12–14, 16–18, 20–22, 24–26, 28–30, 32–34, 36–39. The complaint alleges seven counts of breach of contract and, in the alternative, unjust enrichment. *Id.* ¶¶ 40–48.

Taxier soon answered the complaint, but Jetax failed to appear. *Lakers for Garmets*, ECF No. 16, ECF No. 18, ECF No. 19, ECF No. 21. The Court scheduled an initial conference for October 7, 2024, to be held by telephone. *Lakers for Garmets*, ECF No. 20. Neither party appeared for the conference. *See Lakers for Garmets*, Show Cause Order dated Oct. 7, 2024. As a result, an Order to Show Cause issued, and a show cause hearing was scheduled for October 15, 2024, in person at the Central Islip Courthouse. *See id.*; Min. Entry, ECF No. 24. Counsel for both parties appeared at the show cause hearing. *Lakers for Garmets*, Min. Entry, ECF No. 24.

---

[4] The complaint spells the company's name in two different ways—"garmets" and "garmens." It is unclear which of "garmets" or "garmens" is correct or whether both are erroneous spellings of "garments." As "garmets" is used in the case caption, and no party has attempted to correct the caption, the Court will assume it is correct and thus utilizes it here. As will be discussed throughout this opinion, however, the parties to these actions have been less than diligent in appearing for conferences, meeting deadlines, pursuing discovery, complying with procedural rules, and filing papers demonstrating adequate attention to detail. This is perhaps best exemplified by Plaintiff's instant motion for default judgment where, in support of damages, Plaintiff submits several invoices from HGM, which is not a party to this lawsuit. *See Trico Tarek Factory*, Mot. Default J. Ex. 2, ECF No. 17-2.

During the hearing, the parties indicated that they wished to consolidate *Lakers for Garmets* with three other matters proceeding in this District, namely *HGM*, *Trico Tarek Factory*, and *Master for Clothes*. As discussed, at the time of the October 15, 2024, show cause hearing in *Lakers for Garmets*, Taxier had already filed a motion to consolidate on the docket in *HGM* on September 30, 2024, and HGM had filed an opposition thereto on October 10, 2024. However, during the show cause hearing, Plaintiff Lakers for Garmets' counsel, who also represented HGM, indicated that he planned to withdraw his opposition and would now consent to consolidation. *Id.* As the Minute Entry indicates, the Court refrained from setting a discovery schedule in *Lakers for Garmets* in light of the *sub judice* motion to consolidate before Judge Choudhury in *HGM*. *Id.* The parties were instructed that, if *Lakers for Garmets* had not been consolidated within 30 days, a discovery schedule would be set without consolidation, and the Court thus ordered the parties to file a proposed discovery schedule at the end of the 30-day period. *Id.* Thereafter, Judge Choudhury dismissed *HGM* for lack of subject matter jurisdiction and denied the motion to consolidate as moot. *See HGM*, Memorandum & Order, ECF No. 34. Although *Lakers for Garmets* had therefore not been consolidated within the 30-day period, the parties failed to file the proposed discovery schedule at the end of this timeframe as ordered. *See Lakers for Garmets*, Scheduling Order dated Dec. 3, 2024. Thus, on December 3, 2024, the Court scheduled a status conference for December 10, 2024, given this noncompliance. *See id.*

The Court held the status conference on December 10, 2024. *See Lakers for Garmets*, ECF No. 26. Earlier that day, defense counsel had appeared before Magistrate Judge Steven I. Locke for a conference in *Master for Clothes*.[5] *Master for Clothes*, Min. Order, ECF No. 30. Given that the motion to consolidate in *HGM* had been denied as moot when the action was dismissed, the

---

[5] *Master for Clothes* was initially assigned to Judge Locke and, at the time of the conference, had not yet been reassigned to this Court.

parties indicated to Judge Locke that they planned to re-file a motion to consolidate the three remaining cases. *Id.* As a result, Judge Locke ordered the parties to file the motion papers on all three dockets, and to do so by January 10, 2025. *Id.* However, contrary to the representation that had been made to this Court at the show cause hearing in *Lakers for Garmets* in October 2024, and in the letter filed on the docket in *HGM* in which Plaintiff HGM withdrew its opposition to the motion, the parties appear to have indicated to Judge Locke that Plaintiff Master for Clothes would be opposing the motion, as Judge Locke's briefing schedule set a deadline for Plaintiff Master for Clothes to file a memorandum of law in opposition. *See id.* Notably, while all four plaintiffs are represented by the same lead counsel, Plaintiff Master for Clothes is also represented by a second attorney, who appeared alone at the conference before Judge Locke. *See id.* It is possible that the inconsistency regarding whether Plaintiff Master for Clothes would be opposing the motion to consolidate stemmed from a miscommunication between co-counsels. Nevertheless, this Court, in an effort to conform to Judge Locke's Order, also ordered the parties in *Lakers for Garmets* to file their motion to consolidate by January 10, 2025, but did not set a deadline to file an opposition, since the parties had previously indicated that the motion would be unopposed. *Lakers for Garmets*, ECF No. 26. The parties filed joint motions to consolidate on the dockets in all three cases on January 6, 2025, in accordance with the Court's Order. *See Lakers for Garmets*, ECF No. 27; *Master for Clothes*, ECF No. 31; *Trico Tarek Factory*, ECF No. 20.

At this point, the parties had indicated several times that they wished to consolidate *Lakers for Garmets* with *Trico Tarek Factory* and *Master for Clothes* in their entirety, but, at the least, for purposes of discovery. Because discovery can easily be conducted jointly without formal consolidation, the matters of *Trico Tarek Factory* and *Master for Clothes*, which were previously assigned to other Magistrate Judges, were reassigned to this Court, as this Court was already

overseeing discovery in *Lakers for Garmets*. To be sure, all three plaintiff companies were represented by the same lead attorney, the individual defendant was also represented by the same attorney for all three actions, and the relevant documentation was similar for all three cases, making joint discovery relatively simple to conduct.

Given the joint discovery, the Court's next conference with the parties, while scheduled on the docket in *Master for Clothes*, was a joint discovery conference regarding all three cases. *See Master for Clothes*, Scheduling Order dated January 13, 2025; Min. Entry, ECF No. 32; *Lakers for Garmets*, Min. Entry, ECF No. 28; *Trico Tarek Factory*, Min. Entry, ECF No. 22. During that conference, defense counsel indicated that Taxier planned to file a consolidated motion to dismiss in all three cases, as the argued basis for dismissal would be the same—namely, that there is no basis to pierce the corporate veil and hold Taxier liable for the corporation's purchases. *See Lakers for Garmets*, Min. Entry, ECF No. 22. Because the conference pertained, *inter alia*, to discovery in all three cases, the Court issued a joint Minute Entry, filed on all three dockets, which also set a briefing schedule for the anticipated motion to dismiss. *See Master for Clothes*, Min. Entry, ECF No. 32; *Lakers for Garmets*, Min. Entry, ECF No. 28; *Trico Tarek Factory*, Min. Entry, ECF No. 22. The Court-ordered briefing schedule, however, was set *only* for purposes of *Master for Clothes*, as this Court is the sole presiding Court in that action. For purposes of *Lakers for Garmets* and *Trico Tarek Factory*, the docket text lists the briefing schedule that was set for *Master for Clothes*, but orders the parties as follows: "Counsel shall follow the motion practice rules of the assigned District Judges assigned to the related cases." *Lakers for Garmets*, Min. Entry, ECF No. 28 (stated in docket text); *Trico Tarek Factory*, Min. Entry, ECF No. 22 (stated in docket text). By contrast, the docket text in *Master for Clothes* does *not* order counsel to follow the individual rules of the assigned District Judge, as no District Judge is assigned to that action. *Master for Clothes*, Min.

Entry, ECF No. 32. Thus, the Court's Order acknowledged the parties' request to file the same motion papers in all three cases, but, as the Court does not have the authority to grant this request in *Lakers for Garmets* and *Trico Tarek Factory*, nevertheless contemplated that the parties would need to seek leave from the District Judges assigned to those actions to do so.[6]

Contrary to the Court's instructions, Taxier filed the motion to dismiss only on the docket in *Lakers for Garmets*, without filing a pre-motion conference letter seeking leave to do so as required under the District Judge's Individual Rules, and has neither filed the motion on the dockets in *Master for Clothes* and *Trico Tarek Factory*, nor filed a pre-motion conference letter in *Trico Tarek Factory* seeking leave to do so.[7] *See Lakers for Garmets*, ECF No. 29, ECF No. 31, ECF No. 32, ECF No. 34. Moreover, while the Court set the briefing schedule for purposes of *Master for Clothes*, the motion filed on the docket in *Lakers for Garmets* fails to even comply with that schedule. Specifically, the Court-ordered briefing schedule for *Master for Clothes* was as follows: "Defendant shall serve the motion on Plaintiff by March 15, 2025; Plaintiff shall serve the [opposition] on Defendant by April 10, 2025; Defendant shall serve the reply and file the fully-briefed motion by April 20, 2025." *Master for Clothes*, Min. Entry, ECF No. 32. Yet, Taxier filed the motion to dismiss on April 22, 2025, on the wrong docket, and that submission fails to include the opposition and reply.[8] *See Lakers for Garmets*, ECF No. 34. To date, the parties have neither filed the opposition nor reply, and the plaintiffs in all three actions are now attempting to obtain

---

[6] The Honorable LaShann DeArcy Hall has since issued an Order in *Lakers for Garmets* prohibiting the parties from utilizing the same motion papers filed in *Master for Clothes* and *Trico Tarek Factory*. *See Lakers for Garmets*, Order dated May 9, 2025. The District Court's Order governs.

[7] The motion also indicated that it was a Rule 12(b)(6) motion for failure to state a claim. *See Lakers for Garmets*, Mot. Dismiss, ECF No. 34. However, Taxier had already filed an answer, and thus it was actually a Rule 12(c) motion for judgment on the pleadings. *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 125–27 (2d Cir. 2001); 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1361 (3d ed. 2025).

[8] The parties have also continued to file discovery materials on the docket in *Lakers for Garmets* and the two other open cases despite being ordered by Magistrate Judge Arlene R. Lindsay in *HGM* to stop doing so, since, pursuant to Local Civil Rule 5.1, discovery materials are not to be filed on the docket unless they are the subject of a motion or other request. *See Lakers for Garmets*, ECF No. 30; *HGM*, ECF No. 20; *HGM*, Order dated July 15, 2024.

discovery for the purpose of opposing the motion.[9] *See Lakers for Garmets*, Subpoena, ECF No. 30; Mot. Quash, ECF No. 33; Opp'n Mot. Quash, ECF No. 37; *Master for Clothes*, Subpoena, ECF No. 33; *Trico Tarek Factory*, Subpoena, ECF No. 24. Thus, it appears that the parties will not be ready to file the fully briefed motion for quite some time. Notably, Plaintiff Master for Clothes did not object to the April 10, 2025, opposition deadline when it was set and made no indication to the Court that it would be seeking discovery and would therefore be unable to meet this deadline.

Because the parties had failed to comply with the pre-motion conference requirement, on May 9, 2025, Judge DeArcy Hall denied the motion to dismiss and ordered the parties to comply therewith by May 15, 2025. *See Lakers for Garmets*, Order dated May 9, 2025. The Order also prohibited the parties from filing joint motion papers directed at all three actions. *See id.* On May 15, 2025, Taxier filed a letter motion for a pre-motion conference. *See Lakers for Garmets*, ECF No. 38. The motion was granted, and the pre-motion conference was scheduled for, and held on, July 10, 2025. *See Lakers for Garmets*, Order dated May 29, 2025.

## III.    *Master for Clothes Manufacturing and Embroidery v. Jetax Inc.*, 24-CV-2409-ST (E.D.N.Y.).

In *Master for Clothes*, the third-filed case, Plaintiff Master for Clothes alleges that the defendants, Jetax Inc. and Jeffery Taxier, placed fourteen orders for clothes, which were shipped in January, February, August, and October of 2021, and January of 2022, but that the defendants failed to pay for the orders either in whole or in part. *Master for Clothes*, Compl. ¶¶ 11–65, ECF No. 1. The plaintiff thus alleges fourteen counts of breach of contract and, in the alternative, unjust

---

[9] It is unclear how the plaintiffs plan to utilize these discovery materials to oppose the motion to dismiss, unless they seek to convert it to a motion for summary judgment under Rule 12(d) and Rule 56, since the documents sought do not appear to be attached to, incorporated by reference in, or integral to the complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106–07 (2d Cir. 2021); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

enrichment, pertaining to the fourteen separate contracts for those orders. *Id.* ¶¶ 66–74. The contracts in *Master for Clothes* stem from different clothing orders, shipped by a different seller, than those at issue in *Lakers for Garmets* and *HGM*.

*Master for Clothes* was also filed in the Southern District and transferred to this District. Upon transfer, as discussed, it was assigned directly to Magistrate Judge Steven I. Locke in accordance with the Eastern District's pilot program. E.D.N.Y. Administrative Order No. 2023-23; *Master for Clothes*, Clerk's Notice re: Consent, ECF No. 11. On April 1, 2024, the Clerk of Court issued the standard *pro forma* docket notification advising the parties that the matter had been so assigned and that, if all parties consented, the Magistrate Judge was available to conduct all proceedings in the matter, including a jury trial. *Master for Clothes*, Clerk's Notice re: Consent, ECF No. 11. The docket notification attached a copy of the Consent to Magistrate Judge Jurisdiction form and instructed the parties to fill out, sign, and file the form "*only if* all parties wish[ed] to consent." *Id.* The docket notification further stated as follows: "Do NOT return or file the consent unless all parties have signed the consent. Unless all parties consent to the Magistrate Judge['s] jurisdiction by the deadline set forth in the Administrative Order 2023-23, a District Judge will be assigned to the case." *Id.*

That same day, Plaintiff Master for Clothes filed the consent form on the docket. *Master for Clothes*, ECF No. 12. The consent form was defective, however, in that it was only signed by the plaintiff, without signatures from either of the defendants. *See id.* Indeed, it is not possible for the parties to consent to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c) because Jetax is in default. *Henry v. Tri-Servs., Inc.* ("*Tri-Servs., Inc.*"), 33 F.3d 931, 933 (8th Cir. 1994) (holding that actions in which a defendant has defaulted cannot be heard by a Magistrate Judge pursuant to 28 U.S.C. 636(c) because consent cannot be obtained from all parties); *Ideavillage Prods. Corp.*

- 11 -

*v. Antiker*, No. 1:20-CV-04681, 2021 WL 1987382, at *2 (S.D.N.Y. May 17, 2021) ("The law is clear . . . that a magistrate judge cannot enter default judgment against a party absent the defaulting party's consent to the jurisdiction of the magistrate judge to enter final judgment." (collecting cases)); *cf. Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11 CIV. 5980, 2013 WL 5977440, at *1 n.1 (S.D.N.Y. Nov. 12, 2013) (engaging in dispositive adjudication with respect to consenting defendants, but recommending disposition with respect to defaulting defendant, because defaulting defendant had not consented and magistrate thus lacked authority to adjudicate defaulting defendant's liability), *report & recommendation adopted*, No. 11 CIV. 5980, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014).

Under the pilot program set forth in Administrative Order 2023-23, a Magistrate Judge is solely assigned to a case from its outset, presides over preliminary matters, and holds the initial conference. E.D.N.Y. Administrative Order 2023-23. If all parties do not, or cannot, validly consent to the Magistrate Judge's jurisdiction within 30 days following the date of the initial conference, the Magistrate Judge will continue to preside over the matter for discovery purposes, but a District Judge will also be assigned. *Id.*

In accordance with the Administrative Order, on September 26, 2024, Magistrate Judge Locke held the initial conference. *Master for Clothes*, ECF No. 26. By 30 days thereafter, the parties still had not filed a valid consent form, but the Clerk never assigned the matter to a District Judge, apparently due to an oversight. Nevertheless, on October 8, 2024, Plaintiff Master for Clothes filed a motion for default judgment against the non-appearing corporate defendant, thus beginning dispositive motion practice. *Master for Clothes*, ECF No. 29. To avoid ruling on the dispositive motion, Judge Locke held the motion in abeyance pending the possibility of consolidation of the matter with *Lakers for Garmets* and *Trico Tarek Factory*. *Master for Clothes*,

ECF No. 30. Indeed, it would not have been prudent to assign a District Judge to the matter to begin adjudicating the dispositive motion because, if the actions were consolidated, the matter would likely have been reassigned to a different District Judge while the motion was still being considered.

On January 6, 2025, the parties filed motions to consolidate on the dockets in all three cases, including *Master for Clothes*. *Master for Clothes*, ECF No. 31. As discussed, since the parties were at least going to proceed with consolidated discovery, on January 8, 2025, *Master for Clothes* was reassigned to this Court. *See Master for Clothes*, Order Reassigning Case dated Jan. 8, 2025. Although the parties still had not validly consented, a District Judge was not assigned to the case during this reassignment. Thereafter, on January 17, 2025, the Court entered an Order granting the motion to consolidate in *Master for Clothes*. *See* Order dated Jan. 17, 2025. While not indicated in the Order, the Court intended to grant consolidation for discovery purposes only. Since the consolidation of discovery had already been effectuated by virtue of reassigning all three cases to this Court, the Order granting the motion was simply intended to memorialize this reassignment and terminate the motion. From the subsequent filings in *Lakers for Garmets*, it appears that the parties believed that this Court's Order was sufficient to have consolidated all three actions in all respects, including for trial.[10] However, this Court does not have the authority to grant consolidation in all respects in *Lakers for Garmets* and *Trico Tarek Factory*; only the District Judges assigned to those actions have the authority to do so. Moreover, as the consent to Magistrate Judge jurisdiction in *Master for Clothes* is invalid and a District Judge must be assigned thereto,

---

[10] For example, a motion to quash filed on the docket in *Lakers for Garmets* and addressed to this Court states that, after the dismissal of *HGM*, "[t]he three remaining cases continued . . . and were consolidated by Your Honor for all further purposes." *Lakers for Garmets*, Mot. Quash, ECF No. 33.

the Court also lacks authority to grant consolidation for purposes of trial in that action. Given the confusion regarding the Court's Order, a correction will issue in due course.

On January 21, 2025, as discussed, the Court held a joint discovery conference for all three cases, during which the parties indicated that Taxier wished to file a consolidated motion to dismiss, as the argued basis for dismissal would be the same for all three—whether there is a basis to pierce the corporate veil and hold Taxier liable for Jetax's purchases. *Master for Clothes*, Min. Entry, ECF No. 32. As discussed, the Court set a briefing schedule for the motion for purposes of *Master for Clothes*, as a District Judge had not yet been assigned. *Id.* For *Lakers for Garmets* and *Trico Tarek Factory*, the Court instructed the parties to comply with the Individual Rules of the District Judges assigned to those actions, but contemplated that, once they did so, the parties could substantially reuse the relevant motion papers in the other actions, so long as the assigned District Judges authorized them to do so, although the memoranda would not necessarily be filed on the same schedule.

## IV.    *Trico Tarek Factory v. Jetax Inc.*, 24-CV-3731-JMA-ST (E.D.N.Y.).

The Court now turns to the case at bar. At this point, it is important to note that, for purposes of a motion for default judgment, the Court is required to accept Plaintiff's well-pleaded factual allegations, except those concerning damages, as true. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188–89 (2d Cir. 2015) (per curiam) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)); *Henry v. Oluwole* ("*Henry*"), 108 F.4th 45, 55 (2d Cir. 2024). As such, the facts from Plaintiff's Complaint that are relevant to that motion are deemed true for purposes thereof.

In the instant case, Plaintiff alleges that Defendants placed five orders for clothes which were shipped in April, May, and June of 2021, but failed to pay the resulting invoices either in whole or in part. *Trico Tarek Factory*, Compl. ¶¶ 11–31, ECF No. 1. Plaintiff thus alleges five counts of breach of contract and, in the alternative, unjust enrichment. *Id.* ¶¶ 32–40. Again, while Defendants are the same purchasers, the orders otherwise have no relation to the orders at issue in *Lakers for Garmets* and *Master for Clothes*, as Plaintiff is a different vendor.

Unlike *Lakers for Garmets* and *Master for Clothes*, the case at bar was initially filed in this District, and was assigned to District Judge Joan M. Azrack and Magistrate Judge Anne Y. Shields. *See Trico Tarek Factory*, Docket Entry dated May 24, 2024. As in *Lakers* and *Master*, while Taxier appeared and filed an Answer, Jetax failed to appear, the Clerk of Court entered default, and Plaintiff filed a motion for default judgment. *Trico Tarek Factory*, Notice of Appearance, ECF No. 11; Answer, ECF No. 12; Clerk's Entry of Default, ECF No. 15; Mot. Default J., ECF No. 17.

On January 7, 2025, Judge Azrack issued an Order to Show Cause, ordering Plaintiff to show cause as to why the matter should not be dismissed for failure to adequately allege diversity, presumably finding the same inadequacies that led to dismissal in *HGM*. *See Trico Tarek Factory*, Order to Show Cause dated Jan. 7, 2025. Specifically, Judge Azrack found that Plaintiff "failed to sufficiently allege the citizenship of" Taxier, and ordered Plaintiff "to show cause by January 21, 2025, in writing, through sworn affidavit, why [the District] Court should not dismiss this action for lack of subject matter jurisdiction." *Id.* As discussed, on January 8, 2025, the action was reassigned from Magistrate Judge Anne Y. Shields to this Court to oversee the consolidated discovery. *See Trico Tarek Factory*, Order Reassigning Case dated Jan. 8, 2025.

On January 20, 2025, Plaintiff filed a letter addressed to *this* Court, "request[ing] to inquire about the previous [O]rder of [the Honorable] Joan [M.] Azrack." *Trico Tarek Factory*, Letter,

ECF No. 21. The letter "inquire[d] whether this [C]ourt will direct the undersigned to submit aforementioned affidavit, and if it is the case, . . . request[ing] two weeks to do prepare and the affidavit and get it properly signed as my clients is based in Egypt and it requires additional time to prepare such affidavit." *Id.* (grammatical errors in original). The letter in question was not filed using the proper "motion" event, and was addressed to the wrong Court, as this Court has no authority to overturn or modify the District Judge's Order. As a result, the letter was not ruled on. On January 30, 2025, Plaintiff filed an affirmation containing additional jurisdictional allegations in an attempt to cure the defect, and stated that Plaintiff "submitted a request for a two-weeks extension to file [the] affidavit," although Plaintiff had not, because Plaintiff's request was facially invalid, in that it sought for this Court to extend a deadline set by the District Judge. *Trico Tarek Factory*, Aff. ¶ 3, ECF No. 23. Plaintiff's response to the Order to Show Cause has not yet been ruled on by the District Judge.

On April 22, 2025, Judge Azrack referred the October 8, 2024, motion for default judgment and January 6, 2025, motion to consolidate to this Court for this report and recommendation. *See Trico Tarek Factory*, Referral Order dated Apr. 22, 2025.

## LEGAL STANDARDS

### I.    Consolidation Standard.

Rule 42(a) of the Federal Rules of Civil Procedure permits courts to consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "[T]rial court[s] ha[ve] broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) (citations omitted); *see also Hall v. Hall*, 584 U.S. 59, 77 (2018) ("District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases."). To make this determination, courts must consider the following factors:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Johnson*, 899 F.2d at 1285 (citation and quotations omitted). "The Rule should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citations and quotations omitted).

## II.    Default Judgment Standard.

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, the plaintiff must obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). *Priestley*, 647 F.3d at 504–05 (citing Fed. R. Civ. P. 55(a)); *Mickalis Pawn Shop*, 645 F.3d at 128 (citation omitted). Second, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505 (citing Fed. R. Civ. P. 55(b)); *see also Mickalis Pawn Shop*, 645 F.3d at 128.

The Clerk's entry of default under Rule 55(a) "does not by definition entitle plaintiffs to an entry of a default judgment" under Rule 55(b). *Bricklayers,* 779 F.3d at 187; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) ("[A] plaintiff is not entitled to a default judgment as a matter of right."). Instead, plaintiffs bear the burden of establishing that default judgment is proper, and must make several showings on a Rule 55(b) motion before a default judgment will enter.

First, the plaintiff must establish that the court has subject matter jurisdiction over the action. *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F.

Supp. 3d 324, 330 (E.D.N.Y. 2024); *Mulligan Funding LLC v. Tommy Interior Contracting Corp.*,

741 F. Supp. 3d 1, 8–9 (E.D.N.Y. 2024); *MBC Ventures, LLC v. Miniventures of NY, Inc.*, No.

3:20-CV-762, 2021 WL 3709808, at *5 (D. Conn. Aug. 20, 2021) (citing *Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir.

1997)); *see also Mickalis Pawn Shop*, 645 F.3d at 125–28 (addressing subject matter jurisdiction

before determining whether district court abused discretion in entering default judgment).

Second, the plaintiff must satisfy the procedural prerequisites applicable to motions for

default judgment. *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330; *Mulligan Funding*, 741 F. Supp.

3d at 11 ("A motion for default judgment will not be granted unless the . . . [movant] adheres to

all of the applicable procedural rules." (citation omitted)). Specifically, the plaintiff must

demonstrate that the summons and complaint were properly served on the defaulting party,[11]

establish compliance with the Servicemembers Civil Relief Act,[12] and submit motion papers that

comply with Local Civil Rules 7.1 and 55.2. *Mulligan Funding*, 741 F. Supp. 3d at 9–14; *Jacome*,

2021 WL 3375134, at *3–5 (movant must establish proper service and compliance with local

rules); *Diaz Saavedra v. Dom Music Box Inc.*, No. 21CV6051, 2022 WL 20655809, at *2–6

(E.D.N.Y. Dec. 5, 2022) (citing 50 U.S.C. § 3931(b)(1)) (movant must establish compliance with

local rules and Servicemembers Civil Relief Act), *report & recommendation adopted*, Docket

---

[11] Some courts examine service as its own requirement, *Jacome v. Optical 49, Inc.*, No. 120CV02615, 2021 WL 3375134, at *4 (E.D.N.Y. July 9, 2021), *report & recommendation adopted*, No. 20CV02615, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021), *Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09 CV 5558, 2013 WL 5329254, at *2–3 (E.D.N.Y. Sept. 20, 2013), while others subsume it within an examination of personal jurisdiction, *Mulligan Funding*, 741 F. Supp. 3d at 9–11, though the Second Circuit has "'left open the question whether a district court *must* investigate its personal jurisdiction over a defendant' when considering a motion for default judgment," *Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 9–10 (2d Cir. 2017) (summary order) (quoting *Mickalis Pawn Shop*, 645 F.3d at 133). Courts do, however, have the discretion to consider personal jurisdiction *sua sponte*, *Hood*, 691 F. App'x at 10, and several exercise this discretion by requiring movants to make an adequate showing in that respect, *see, e.g.*, *Mulligan Funding*, 741 F. Supp. 3d at 9.

[12] While this is generally a requirement, *see* Loc. Civ. R. 55.2 (effective July 1, 2024), 50 U.S.C. § 3931(b)(1), it does not apply here where the only defaulting defendant is a corporation.

Order (E.D.N.Y. July 7, 2023); *see also Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) ("Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."). A movant's failure to satisfy any of these procedural prerequisites warrants denial of the motion. *Mulligan Funding*, 741 F. Supp. 3d at 9–14; *Diaz Saavedra*, 2022 WL 20655809, at *3 (holding that "failure to include a memorandum of law" as required by Local Civil Rule 7.1 "alone is sufficient to warrant denial of [a] motion for default judgment," and collecting cases); *Lugo v. Allstate Ins. Co.*, No. 19-CV-7150 (JMA) (JMW), 2022 WL 3928727, at *5–6 (E.D.N.Y. Aug. 10, 2022) (failure to comply with Local Civil Rule 55.2 alone warrants denial of motion), *report & recommendation adopted*, 2022 WL 3914981 (E.D.N.Y. Aug. 31, 2022).

Third, because "[t]he decision whether to enter default judgment is committed to the district court's discretion," *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted), courts must decide whether to exercise this discretion, mindful that default judgments are generally disfavored and that there is a strong preference for resolution on the merits, *Mickalis Pawn Shop*, 645 F.3d at 129. To determine whether the entry of a default judgment is warranted, courts examine three factors, *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54–61 (E.D.N.Y. 2022), *Mulligan Funding*, 741 F. Supp. 3d at 9, *Burns v. Scott*, 635 F. Supp. 3d 258, 271 (S.D.N.Y. 2022), called the "*Enron* factors," *Henry*, 108 F.4th at 52, which examine "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party," *Grp. One Ltd.*, 625 F. Supp. 3d at 54 (quoting *Bricklayers*, 779 F.3d at 186), *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 236 (S.D.N.Y. 2023) (same). "Other relevant equitable factors may also be considered, for instance, . . . whether the entry of default would bring about a harsh or unfair result." *Grp. One Ltd.*, 625 F. Supp. 3d at 54 (quoting *Keebler v. Rath*, 405

F. App'x 517, 519 (2d Cir. 2010) (summary order)). "[B]ecause defaults are generally disfavored . . . , when doubt exists as to whether a default [judgment] should be granted . . . , the doubt should be resolved in favor of the defaulting party." *Henry*, 108 F.4th at 51 (citation omitted).

Fourth, assuming that the *Enron* factors are satisfied and the entry of default judgment is warranted, the plaintiff must show that the allegations in the complaint, when taken as true, are sufficient to state a claim against the defaulting defendant, such that liability is established as a matter of law for every cause of action alleged therein. *Bricklayers,* 779 F.3d at 187 (citation omitted); *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[I]t [is] the plaintiff's burden to demonstrate that th[e] uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."); *Henry*, 108 F.4th at 55 (court must be "convinced that the facts meet the elements of the relevant cause of action" before entering default judgment); *Grp. One Ltd.*, 625 F. Supp. 3d at 61 (examining *Enron* factors before addressing whether well-pleaded factual allegations stated claim for liability, and collecting cases). In making this determination, the court accepts all well-pleaded factual allegations in the complaint, except those concerning damages, as true and draws all reasonable inferences in the plaintiff's favor. *Henry*, 108 F.4th at 55 (collecting cases); *Bricklayers*, 779 F.3d at 189; *Priestley*, 647 F.3d at 506. The court does not, however, credit conclusory allegations as true. *Henry*, 108 F.4th at 55; *Priestley*, 647 F.3d at 506; *Mulligan Funding*, 741 F. Supp. 3d at 8 ("A plaintiff bears the burden of alleging 'specific facts,' rather than 'mere labels and conclusions' or a 'formulaic recitation of the elements,' so that a court may infer a defendant's liability." (citation omitted)).

The complaint must facially state a claim without resort to extrinsic evidence, under the same standards applicable to a Rule 12(b)(6) motion to dismiss. *Johannes Baumgartner*

*Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 & n.6, 288–89 (E.D.N.Y. 2013) (Seybert, J.) (holding that, because defaulting defendants lack adequate notice of extrinsic "allegations" and are "deprived of a meaningful opportunity to respond" to them, extrinsic evidence cannot be considered in assessing liability); *Oparaji v. Home Retention Corp.*, No. 21 CV 2758, 2022 WL 987560, at *13 (E.D.N.Y. Jan. 11, 2022) ("In evaluating [a] defendant's liability, the Court is limited to the four corners of the complaint."), *report & recommendation adopted*, No. 1:21-CV-2758, 2023 WL 2155764 (E.D.N.Y. Feb. 22, 2023), *aff'd*, No. 24-1444-CV, 2025 WL 1901297 (2d Cir. July 10, 2025) (summary order); *Cnty. of Suffolk v. Golden Feather Smoke Shop, Inc.*, No. 09CV162, 2016 WL 1245001, at *5 n.4 (E.D.N.Y. Mar. 23, 2016) (same); *Nagessar v. Ne. All. Mortg. Banking Corp.*, No. 18-CV-6709, 2022 WL 3139098, at *3 (E.D.N.Y. Aug. 5, 2022) (same); *Burns*, 635 F. Supp. 3d at 272 ("If . . . the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, even if the post-default inquest submissions supply the missing information." (citation modified)); *J & J Sports Prods., Inc. v. Abdelraouf*, No. 18CV2547, 2019 WL 457719, at *4 (E.D.N.Y. Feb. 5, 2019) ("Plaintiff's assertion that a court may consider documents outside of the pleadings when evaluating a defendant's liability on a motion for default judgment is plainly contradicted by black-letter law."); *Gunawan*, 897 F. Supp. 2d at 83 ("[A] default does not . . . excuse any defects in the plaintiff's pleading. . . . [W]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that *those uncontroverted allegations, without more*, establish the defendant's liability on each asserted cause of action." (emphasis added)); *see also Sec. & Exch. Comm'n v. Yin* ("*Yin I*"), No. 17-CV-972, 2020 WL 6801915, at *3 (S.D.N.Y. Nov. 19, 2020) ("[A]bundant authority establish[es] that the legal sufficiency of a complaint is reviewed under the same standard whether on a motion to

dismiss or a motion for default judgment."); *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014) (concluding that the "district court properly applied an identical standard in assessing" a motion to dismiss and motion for default judgment); *Henry*, 108 F.4th at 55 n.5 ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment equivalent relief to[,] but not greater than[,] that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." (citation omitted)); *Mickalis Pawn Shop*, 645 F.3d at 137 n.23 ("[A] district court may not enter a default judgment unless the plaintiff's complaint states a valid *facial* claim for relief." (emphasis added)). *Contra Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 150–51, 150 n.6 (N.D.N.Y. 2020) (discussing district court split regarding whether courts are limited to four corners of complaint in assessing liability, collecting cases, and concluding that extrinsic evidence may be considered).[13] Thus, only documents that are attached to, integral to, or incorporated by reference in the complaint may be considered in assessing whether the complaint states a claim. *Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL 5399245, at *1 & n.3, *9 (E.D.N.Y. Aug. 30, 2024) (collecting cases), *report & recommendation adopted*, Docket Order (E.D.N.Y. Sept. 26, 2024); *Am. Builders & Contractors Supply Co. v. CR1 Contracting, LLC*, 565 F. Supp. 3d 330, 341 (W.D.N.Y. 2021) (considering terms of contract submitted on motion for default judgment because contract was

---

[13] In researching this split of authority, the cases applying this Court's approach appear to substantially outnumber those to the contrary. Moreover, the Court finds the rationale for the contrary approach unavailing. For example, Rule 55(b)(2)(C), upon which many such courts rely, *see Hunter*, 505 F. Supp. 3d at 150–51, provides that courts may require a plaintiff seeking default judgment to "establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2)(C). This rule, by its plain terms, requires that a fact be actually alleged, and permits courts to require plaintiffs to submit *additional* evidence to support already-alleged facts. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning." (citation omitted)); *see also Morales v. Fourth Ave. Bagel Boy, Inc.*, No. 18CIV3734, 2021 WL 7906501, at *2 (E.D.N.Y. Feb. 12, 2021) (courts may require and use extrinsic evidence to test complaint's factual allegations to determine whether they are "well pleaded"), *report & recommendation adopted*, Docket Order (E.D.N.Y. Mar. 2, 2021).

In any event, the discordance regarding this issue is not relevant in the case at bar. The documents Plaintiff has submitted are, by and large, contractual documents that are integral to the Complaint.

- 22 -

integral to complaint alleging breach of contract); *see Foreman*, 19 F.4th at 106 (discussing this standard in Rule 12(b)(6) context). However, the court, in its discretion, may also require plaintiffs to submit extrinsic evidence to prove the factual allegations in order to satisfy itself that the allegations would have been provable at trial. Fed. R. Civ. P. 55(b)(2)(C); *Henry*, 108 F.4th at 55 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330.

    Finally, after determining that the entry of default judgment would be proper under the *Enron* factors, and that the well-pleaded factual allegations state a claim for relief, the court must determine how much, if any, to award in damages. *See Am. Builders*, 565 F. Supp. 3d at 343–44 (first deciding whether to enter default judgment before turning to question of damages); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (entry of default judgment does not necessarily establish damages); *Grp. One Ltd.*, 625 F. Supp. 3d at 80 (granting default judgment but finding that damages were insufficiently supported); *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527–28 (S.D.N.Y. 2012) (holding that, even when entry of default judgment is appropriate, "the court should decline to award any damages" if the plaintiff has failed to make a sufficient showing thereof, and collecting cases). To do so, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. The "court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234. The plaintiff bears the burden of submitting sufficient evidence to demonstrate damages with reasonable certainty. *Stokes*, 681 F. Supp. 3d at 236.

## DISCUSSION[14]

The Court will first address the District Court's outstanding Order to Show Cause, so that it may satisfy itself that it has subject matter jurisdiction over this action, before proceeding to the merits of the parties' motions. With respect to those motions, the Court will first address the parties' joint motion to consolidate, before turning to Plaintiff's motion for default judgment.

For the reasons set forth below, the Court respectfully recommends that the District Court hold that subject matter jurisdiction over this action is proper. Additionally, the Court respectfully recommends that the parties' joint motion to consolidate be DENIED or, in the alternative, GRANTED IN PART for purposes of reassigning the cases to one District Court, while maintaining their severance. Finally, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE with leave to refile a procedurally compliant motion after litigation against the appearing defendant has concluded.

### I.    Subject Matter Jurisdiction.

It should be noted, at the outset, that Plaintiff would typically be expected to brief the issue of subject matter jurisdiction in connection with its motion for default judgment. *MBC Ventures*, 2021 WL 3709808, at *5 (citing *Transatlantic Marine*, 109 F.3d at 108). Having failed to file a memorandum of law briefing *any* issues for that motion, Plaintiff has failed to do so here. However, the Court cannot adjudicate the merits of the parties' motions absent jurisdiction. *See Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272 (S.D.N.Y. 2018); *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330–32; *DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*, No. 1:21-CV-1007, 2021 WL 1600088, at *1–2 (S.D.N.Y. Apr. 23, 2021). Thus, the Court will begin by

---

[14] For the remainder of this opinion, docket citations will refer to the matter of *Trico Tarek Factory* unless otherwise indicated.

addressing Plaintiff's response to the District Court's pending Order to Show Cause, and will issue a *sua sponte* recommendation thereon.

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction, and it must prove jurisdiction by a preponderance of [the] evidence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (citation modified); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). Diversity jurisdiction under 28 U.S.C. § 1332(a) requires, *inter alia*, that the action be between "citizens of a State and citizens or subjects of a foreign state," otherwise known as alienage jurisdiction. 28 U.S.C. § 1332(a)(2); *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

"For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank*, 692 F.3d at 48 (citing 28 U.S.C. § 1332(c)(1)). "An individual's citizenship, . . . is determined by his domicile . . . . In other words[,] the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (citation modified). However, "residence alone is insufficient to establish domicile for jurisdictional purposes." *Id.* at 54. Instead, domicile is determined by a variety of factors, including:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; . . . payment of taxes; . . . whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Michael David Props. LLC v. Cont'l Cas. Co.*, No. 2:24-CV-3600, 2025 WL 267728, at *2 (E.D.N.Y. Jan. 22, 2025) (citation omitted); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) (summary order). Moreover, allegations made "upon information and belief" are insufficient to establish citizenship. *Michael David Props.*, 2025 WL 267728, at *2; *Mukamal v. Onexxx Prod. & Expl. Corp.*, No. 25-CV-3493, 2025 WL 1617135, at *1 (S.D.N.Y. June 6, 2025); *Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co., LLC*, No. 1:24-CV-02412, 2025 WL 833876, at *2 (S.D.N.Y. Mar. 17, 2025).

Here, Plaintiff alleged that it is "an Egyptian company" and that "its place of business is located at 79 Elmoltaka, Elaraby district, Sheraton Heliopolis, Cairo Egypt." Compl. ¶ 1; *see also id.* ¶ 5. The phrase "its place of business" implies that the address in question is Plaintiff's only place of business, and thus, by default, its principal place of business. Moreover, Plaintiff alleged that Jetax is "a New York corporation and its place of business is located at 68 Inwood R[oa]d, [Port] Washington[,] New York 11050." *Id.* ¶ 2. Finally, Plaintiff alleged that Taxier is "a New York resident and his place of residence is located at" the same address. *Id.* ¶ 3. Plaintiff thus alleged that Defendants "are residents of the State of New York and their permanent place of business is located at [the aforementioned address], and therefore they are residents of the State of New York the matter that meet the first prong of the diversity under 28 U.S.C. § 1332.CHK."[15] *Id.* ¶ 5.

The District Court issued an Order to Show Cause on January 7, 2025, finding that Plaintiff "failed to sufficiently allege the citizenship" of Taxier. Order dated Jan. 7, 2025. The defect that

---

[15] The "CHK" appears in the original. *See* Compl. ¶ 5. The Court's best guess is that "CHK" means "check," *i.e.*, a notation made during drafting to remind Plaintiff to return to this allegation to confirm its accuracy. From the grammar, and the fact that the "CHK" was not removed, Plaintiff certainly failed to at least proofread this allegation, if not more. All four complaints contain this same error, making it clear that the allegation was copied and pasted multiple times without sufficient proofreading.

the District Court identified was obvious: Plaintiff alleged that Taxier is "a New York resident" and provided an address of "residence," but binding Second Circuit precedent plainly holds that residence is insufficient to establish domicile and, in turn, citizenship. *See Van Buskirk*, 935 F.3d at 54.

Thereafter, Plaintiff filed a letter on the docket seeking clarification regarding whether this Court would be requiring Plaintiff to comply with the District Court's Order, apparently under the mistaken belief that this Court has authority to override that Order, and requesting that this Court extend the deadline the District Court set. *See* Letter, ECF No. 21. This Court, of course, did not rule on that request, as it has neither the authority to override the District Court's Order, nor to grant extensions of its deadlines. Nevertheless, Plaintiff thereafter filed an untimely response to the Order, attempting to cure the jurisdictional allegations. *See* Att'y Affirmation, ECF No. 23. In that response, Plaintiff reiterates, several times, the allegation that Taxier is a resident of New York, and adds the following allegations: (1) Taxier is, "[u]pon information and belief, . . . a United States Citizen"; (2) Taxier is the sole owner and president of Jetax, which is a New York corporation; and (3) both Defendants used the aforementioned New York address in communicating with Plaintiff when the contracts were entered into. *Id.* ¶¶ 4–5, 7. Plaintiff also reiterates its allegation that it is incorporated in Egypt and that "its place of business is located in Egypt," attaching several documents to demonstrate this. *See generally id.*

The facts and documents provided do not cure the defect in question. First, as discussed, residence is not sufficient to establish domicile for individual defendants. *Van Buskirk*, 935 F.3d at 54. Reiterating this allegation twice does nothing to cure the Complaint, which already alleged residence and was already defective. Second, that Taxier owns a New York corporation is not relevant to Taxier's domicile, as corporations can be incorporated in any State, notwithstanding

the domiciles of their owners. Third, Taxier's use of the New York address in corresponding with Plaintiff could reasonably be because it is the registered address of Jetax. Indeed, the Complaint alleges several times that Taxier, in corresponding with Plaintiff, was "represent[ing]" Jetax as "its owner, manager and or the person authorized to represent it." *See, e.g.*, Compl. ¶ 11. Fourth, the allegations of Plaintiff's citizenship and the documents submitted to support it are irrelevant to Taxier's citizenship. Finally, even though Taxier need only be a citizen of any State of the United States in order to be diverse from the Egyptian Plaintiff, that Taxier is a citizen of the *United States* does not establish that he is domiciled in, and thus a citizen of, one of the *several States*. To be sure, United States citizens who are domiciled abroad are not citizens of a State. *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001); *see also Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *1 (2d Cir. Jan. 26, 2023) (summary order). Additionally, this allegation is defective in that it was made "[u]pon information and belief." *Michael David Props.*, 2025 WL 267728, at *2; *Mukamal*, 2025 WL 1617135, at *1; *Hous. & Redevelopment Ins.*, 2025 WL 833876, at *2. Plaintiff has thus failed to adequately cure the jurisdictional defect identified by the District Court.

At this juncture, it is important to note that "a federal court's obligation to decide and exercise jurisdiction is not reciprocal." *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206 (2d Cir. 2024). "[W]hile federal courts must ensure that they do not *lack* subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect, there is no corresponding obligation to *find and exercise* subject-matter jurisdiction on a basis not raised by the parties." *Id.* at 206–07. Thus, "a party forfeits the invocation of subject-matter jurisdiction when it fails to timely raise it." *Id.* at 207. Despite having no obligation to do so, courts may *choose* to identify a basis for subject matter jurisdiction not raised by the parties. *Id.* at 208.

While Plaintiff has failed to raise it, a basis for federal question jurisdiction appears from the face of Plaintiff's Complaint. Specifically, while Plaintiff's breach of contract claims do not reference New York law, Plaintiff's reliance on New York law for the unjust enrichment claims, together with the invocation of diversity jurisdiction, make clear that Plaintiff erroneously brought the breach of contract claims under New York law,[16] though they are clearly governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Compl. ¶¶ 32–37. Specifically, "'the CISG governs sales contracts between parties from different signatory countries' unless the parties clearly indicate an intent to be bound by an alternative source of law."[17] *Transmar Commodity Grp. Ltd. v. Cooperativa Agraria Indus. Naranjillo Ltda.*, 721 F. App'x 88, 89 (2d Cir. 2018) (summary order) (quoting *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027 n.1 (2d Cir. 1995)); *accord Busrel Inc. v. Dotton*, No. 1:20-CV-01767, 2022 WL 16559446, at *7–8 (W.D.N.Y. Nov. 1, 2022); *Riccitelli v. Elemar New England Marble & Granite, LLC*, No. 3:08CV01783, 2010 WL 3767111, at *4 (D. Conn. Sept. 14, 2010); *Nantong Sanhai Garment Co. v. Fab Mill Inc.*, No. 21 CIV. 859, 2022 WL 540756, at *2 (S.D.N.Y. Feb. 23, 2022). Both Egypt and the United States are signatory countries, *Eldesouky v. Aziz*, No. 11-CV-6986, 2015 WL 1573319, at *2 & n.5 (S.D.N.Y. Apr. 8, 2015), and the contractual documents submitted in support of the default judgment motion contain no choice of law clauses that would indicate any intent to be bound by another source of law, *see* Mot. Default J. Ex. 2, ECF No. 17-2.[18] For

---

[16] This is precisely why the *HGM* Court found that HGM's breach of contract claims were "state-law causes of action." *HGM*, Order to Show Cause, ECF No. 32.

[17] The CISG does not apply to goods purchased for personal or household use, United Nations Convention on Contracts for the International Sale of Goods ("CISG"), art. 2(a), adopted Apr. 11, 1980, 1489 U.N.T.S. 3, an exception which does not apply here.

[18] The Court can properly consider these documents, for two reasons. First, contracts are integral to complaints alleging breach of contract, and are thus subsumed within the scope of the complaint. *Xiamen*, 2024 WL 5399245, at *1 & n.3 (collecting cases). Second, even if they were not, courts may look outside the pleadings to determine subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l* ("*Hellas*"), 790 F.3d 411, 417 (2d Cir. 2015).

jurisdictional purposes, "the CISG is a federal treaty, . . . [and] claims brought under the CISG fall within the Court's federal question jurisdiction." *Gramercy Holdings I, LLC v. Matec S.R.L.*, No. 20 CIV. 3937, 2023 WL 5917624, at *16 n.12 (S.D.N.Y. Sept. 11, 2023); *accord Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011).

Typically, this Court would not search for jurisdictional bases that the parties have failed to raise, and Plaintiff's error would be its own.[19] This is especially so where, as here, Plaintiff's failure to timely raise the CISG as the basis for its claims would eventually constitute a waiver sufficient to consent to the application of New York law. *Rienzi & Sons, Inc. v. Puglisi*, 638 F. App'x 87, 89–90, 89 n.2, 90 n.3 (2d Cir. 2016) (summary order) (holding that, although the CISG preempts state law, implied consent to New York law by failing to invoke the CISG for more than three years was sufficient to establish choice of law). However, despite having no obligation to do so, courts in this Circuit have occasionally chosen to construe claims that erroneously purport to be based on state law as federal questions, so long as the allegations adequately establish the elements of the federal cause of action on their face. *Eli Lilly Do Brasil, Ltda. v. Fed. Exp. Corp.*, No. 04 CIV. 5285, 2005 WL 2312547, at *3 (S.D.N.Y. Sept. 21, 2005) (Lynch, J.), *aff'd sub nom. Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78 (2d Cir. 2007); *Nantong Sanhai*, 2022 WL 540756, at *2 (holding that plaintiff adequately alleged potential application of CISG by alleging a sale of goods between companies from two countries that were signatories, despite not explicitly alleging the treaty as the basis for the claim).

Here, as discussed, Plaintiff's Complaint facially alleges claims under the CISG, in that it alleges transactions between parties from two signatory countries, neither of whom expressed intent to exclude its application. Under the Supremacy Clause, the CISG preempts New York law

---

[19] From Plaintiff's multiple attempts to invoke diversity jurisdiction, the Court gathers that Plaintiff is unaware of the CISG's existence.

unless the parties agree to exclude it, or consent to the application of another body of law through extensive delay.[20] *Rienzi*, 638 F. App'x at 89–90, 89 n.2, 90 n.3; *see also Busrel Inc.*, 2022 WL 16559446, at *7–8; *Riccitelli*, 2010 WL 3767111, at *4. The delay here has been substantially shorter than the three-year delay in *Rienzi*, and, unlike *Rienzi*, the existence of a federal question under it implicates the Court's subject matter jurisdiction, not merely the substantive law governing the claims. Moreover, unlike *Rienzi*, no substantive issues pertaining to the merits of these claims have been argued by the parties under state law, or adjudicated under state law by the Court. Thus, while the Court's decision to raise this basis certainly cures pleading errors for which Plaintiff would typically bear the burden, it is prudent to do so here, to avoid any doubt regarding the validity of the Court's decision on the instant motions, as well as courts' decisions on the forthcoming motions in this case as well as the parallel cases.

The Court therefore respectfully recommends that Plaintiff's breach of contract claims be held to facially raise a federal question pursuant to 28 U.S.C. § 1331. Having so found, the Court turns to the merits of the parties' motions.

---

[20] At least two courts in this Circuit have allowed plaintiffs to plead separate, alternative claims for breach of contract under the CISG and state law. *Nantong Sanhai*, 2022 WL 540756, at *1–2; *id.* at *2 ("UN CISG [claims] . . . may be pursued simultaneously with state law cont[r]act claims." (citation omitted)); *D & G Grp., S.R.I. v. H.A. Imp. USA*, No. 14-CV-2850, 2015 WL 694925, at *2 (S.D.N.Y. Feb. 18, 2015). These are not truly distinct claims. Unlike, for example, parallel federal and state employment law claims, the CISG *preempts* state law, and a plaintiff cannot recover twice for a breach of one contract. *See Rienzi*, 638 F. App'x at 89–90, 89 n.2, 90 n.3. Only one body of law governs that sale of goods. Other common alternatively-plead claims, such as unjust enrichment, provide a *different* basis for recovery under distinct legal theories. By alternatively pleading two breach of contract "claims" under the CISG and state law, a plaintiff is only raising one breach, and merely identifying an unsettled choice of law question. This conceptualization is not merely academic in this case, where Plaintiff is apparently attempting to plead only state law breach of contract claims. In doing so, Plaintiff did not *choose* state law from among two possible, alternative options. Instead, Plaintiff *incorrectly* plead a body of law that does not apply to these transactions.

It should be noted that pleading only the CISG, or identifying two possible bodies of law in one count, is not jurisdictionally problematic. A plaintiff's attempt to allege a federal cause of action (*i.e.*, to allege that the CISG governs its contract) need only be "arguable" or "colorable" to raise a valid federal question. *A&B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 & n.2 (2d Cir. 2022) (citations omitted). The inquiry into parties' intent to exclude the application of the CISG can, in many cases, be complex and factbound. *See, e.g.*, *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, No. 06 CIV. 3972, 2011 WL 4494402, at *3–5 (S.D.N.Y. Sept. 28, 2011). If such inquiry ultimately yields the conclusion that state law governs the claim, jurisdiction will remain proper, so long as the argument for the application of the CISG was colorable.

## II.    Motion to Consolidate.

As discussed, the three actions that the plaintiffs and the individual defendant seek to consolidate have already been consolidated for purposes of conducting joint discovery. Indeed, as the Court briefly explained in the factual background set forth above, there are several reasons why joint discovery is prudent here. The necessary discovery in all three cases primarily consists of contractual documents, including order forms, bank records, and packing slips, exchanged between the plaintiff clothing manufacturers and the two defendants,[21] the latter of whom are common to all three actions. The defendants could turn over the relevant documents for all three actions and it would likely not be unduly burdensome for the plaintiffs to differentiate which documents apply to which plaintiffs, as there are only five, seven, and fourteen contracts at issue, respectively, and all three plaintiffs are represented by the same lead attorney. Moreover, this Court can easily facilitate joint discovery by holding joint conferences to oversee this process, as it is now assigned to all three cases.

The parties' joint motion, however, seeks to consolidate the three actions for all purposes, including trial. While their joint motion fails to explain the reason for this request, it appears to be because some aspects of pre-trial dispositive motion practice will likely be duplicative. The motions to dismiss illustrate this: regardless of whether the seven orders purchased from Plaintiff Lakers for Garmets, the fourteen orders purchased from Plaintiff Master for Clothes, or the five orders purchased from Plaintiff Trico Tarek Factory, are at issue, the answer to whether the corporate veil can be pierced to hold the individual defendant liable for the corporate defendant's purchases would likely be the same.

---

[21] Taxier has represented to the Court that Jetax is defunct, and thus cannot appear. The Court will not make a factual finding on this issue, and this discussion leaves open the possibility that Jetax might appear in the future.

As discussed, notwithstanding Plaintiff's apparent oversight regarding the existence or application of the CISG, the Complaint does, indeed, allege breach of contract actions thereunder. Moreover, the two complaints in the other two actions have the same construction as the Complaint in the case at bar, and also allege breaches of contracts between the plaintiffs, who are Egyptian companies, and the same two Defendants herein, an American company and its principal. Thus, all three complaints allege breach of contract actions under the CISG, and Taxier's motions to dismiss in all three cases will be governed by the same body of law.

To determine the risk of "inconsistent adjudications of common factual and legal issues" on these motions, *Johnson*, 899 F.2d at 1285 (citation and quotations omitted), and the expenditure of court resources adjudicating them separately, it is useful to consider what body of law will govern them, and how complex the substantive veil piercing analysis will be. To be sure, courts are less likely to inconsistently adjudicate doctrines with which they are highly familiar and accustomed to adjudicating, as well as straightforward factual scenarios. Moreover, courts (and parties) are less likely to expend substantial resources discussing familiar legal issues more than once.

The question of which body of law governs corporate veil piercing in a CISG case, or even which jurisdiction's choice of law rules should be applied to resolve this question, is not readily obvious. To be sure, courts need not apply the forum state's choice of law rules to causes of action arising under federal law, though they can in some circumstances. *Barkanic v. Gen. Admin. of Civ. Aviation of the People's Republic of China*, 923 F.2d 957, 960–61 (2d Cir. 1991); *Eli Lilly*, 2005 WL 2312547, at *3; *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95–96 (2d Cir. 1999); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 287 n.2 (S.D.N.Y. 2025). Moreover, under New York law, veil piercing is not an independent cause of

action, but is merely an equitable basis for imposing liability on, and obtaining relief from, a third party for a predicate cause of action brought against a directly liable party. *Cortlandt St. Recovery Corp. v. Bonderman* ("*Cortlandt*"), 96 N.E.3d 191, 203 (N.Y. 2018); *see also* 18 C.J.S. Corporations § 38 ("Piercing the corporate veil generally is not itself an action, but is merely a procedural means of allowing liability on a substantive claim."). Put another way, Plaintiff's attempt to pierce the corporate veil and hold Taxier liable cannot be construed to be a separate, state law cause of action under the Court's supplemental jurisdiction. The question of which body of law governs is particularly interesting here, because federal common law veil piercing is substantially more favorable to plaintiffs than New York law, the only other potential body of law that could govern. *Compare Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980) (observing that federal common law veil piercing requires either fraud or domination over corporation), *with Cortlandt*, 96 N.E.3d at 203 (holding that New York veil piercing requires both fraud and domination).

While the only on point case the Court has found applied New York law without deciding the issue, *Nantong Sanhai*, 2022 WL 540756, at *1 n.2, the Court is convinced that New York law would govern the veil piercing question in this case. First, the Supreme Court, in recent decades, has severely limited the application of federal common law, including its choice of law rules. *See Eli Lilly*, 2005 WL 2312547, at *3 & n.3; *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001). It is thus quite likely that the forum state's choice of law rules—here, New York—would apply. To that end, while New York does not automatically apply the law of the state of incorporation to veil piercing questions (*i.e.*, it does not utilize the internal affairs doctrine for veil piercing), *New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*, 145 A.D.3d 16, 22–23 (N.Y. App. Div. 1st Dep't 2016) (internal affairs doctrine does not apply to contract or tort actions brought by

third parties external to corporation), there is a strong presumption in favor of the law of the state of incorporation, *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 434–39 (S.D.N.Y. 2024), *aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025) (summary order), which, here, is New York. Second, even applying a federal common law choice of law analysis, the law of the state of incorporation would likely be selected. *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 247–50 (S.D.N.Y. 2023); *see also Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998).

Having found that New York law would almost certainly apply, the Court considers the likelihood that the courts assigned to these actions will inconsistently adjudicate the New York veil piercing issue or expend substantial, duplicative resources in doing so. In considering this question, it is important to note that, while New York courts often present two rule statements for "veil piercing" and "alter ego" liability, *see Tabchouri v. Hard Eight Rest. Co., LLC*, 219 A.D.3d 528, 531–32 (N.Y. App. Div. 2d Dep't 2023), these doctrines are really one and the same, *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 138–39 (2d Cir. 1991), *In re Stage Presence, Inc.*, 592 B.R. 292, 297–98 (Bankr. S.D.N.Y. 2018) ("[U]nder New York law [the] 'alter ego' and 'veil piercing' theories are really the same . . . [and are] subject to the same substantive requirements."), *aff'd*, No. 12-10525, 2019 WL 2004030 (S.D.N.Y. May 7, 2019), *Citibank*, 714 F. Supp. 3d at 439–40, and these rule statements are simply paraphrases of one another, *see Tabchouri*, 219 A.D.3d at 531–33, *Citibank*, 714 F. Supp. 3d at 439–40. Thus, under New York law, "a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Citibank*, 714 F. Supp. 3d at 439 (quoting *Cortlandt*, 96 N.E.3d at 203). Since

both elements are always required, *TNS Holdings, Inc. v. MKI Sec. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998) ("Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance."), *Tabchouri*, 219 A.D.3d at 531–32, *Citibank*, 714 F. Supp. 3d at 439–45, the "veil piercing" (*i.e.*, fraud) and "alter ego" theories that are often described in two parallel rule statements are best thought of as two common factual scenarios or arguments that arise in these cases,[22] *In re Stage Presence*, 592 B.R. at 297–98.

To determine domination, courts consider several factors, including "whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use." *Tabchouri*, 219 A.D.3d at 531; *Citibank*, 714 F. Supp. 3d at 440–41; *Micro Fines*, 585 F. Supp. 3d at 296. For the "fraud or wrong" prong, "there is no precise definition of the type of wrong necessary to justify piercing the corporate veil," but a defendant's intent to commit the wrong is probative of the question. *Micro Fines*, 585 F. Supp. 3d at 296; *see also Am. Federated Title*, 716 F. App'x at 28. Of relevance here, "a simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the

---

[22] Alter ego arguments emphasize a higher degree of control, *In re Stage Presence*, 592 B.R. at 297–98, but lesser degrees of wrongdoing, *Citibank*, 714 F. Supp. 3d at 439–40, 443–44. Fraud arguments emphasize the inverse. *In re Stage Presence*, 592 B.R. at 297–98; *Passalacqua*, 933 F.2d at 138.

The Court notes that, while cited herein, portions of *Passalacqua*, an oft-cited Second Circuit case, *see New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417, 497 (N.D.N.Y. 2011) (referring to *Passalacqua* as "seminal"), *aff'd in part, vacated in part, remanded*, 766 F.3d 212 (2d Cir. 2014), appear to no longer be good law. While, on several occasions, *Passalacqua* indicates that both domination (*i.e.*, complete control) and a fraud or wrong are required, *see Passalacqua*, 933 F.2d at 138, it also implies that, in cases of fraud, domination is not required, *id.* ("Liability therefore may be predicated either upon a showing of fraud or upon complete control . . . that leads to a wrong."), relying on *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698 (2d Cir. 1990). *Itel Containers* has been abrogated by the New York Court of Appeals, *Micro Fines Recycling Owego LLC v. Ferrex Eng'g, Ltd.*, 585 F. Supp. 3d 289, 295–96 (N.D.N.Y. 2022), which has clearly and recently reaffirmed that both elements are required, *Cortlandt*, 96 N.E.3d at 203–04 (domination required). *Passalacqua* also seems to imply that, in alter ego situations, unintentional harms are sufficient, *Passalacqua*, 933 F.2d at 138 ("[W]hen a corporation is used by an individual to accomplish his own . . . business, . . . [the] shareholder may be held liable for the corporation's . . . negligent acts."), *id.* ("Liability . . . may be predicated . . . upon complete control . . . that *leads to a wrong.*" (emphasis added)), though the Second Circuit has recently concluded that they likely are not, *see Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 F. App'x 23, 28 (2d Cir. 2017) (summary order), a conclusion which finds support among recent New York appellate court cases, *Etage Real Est. LLC v. Stern*, 211 A.D.3d 632, 634 (N.Y. App. Div. 1st Dep't 2022).

corporate veil."[23] *Etage*, 211 A.D.3d at 634; *accord Am. Federated Title*, 716 F. App'x at 28 (citation omitted).

Many of the facts relevant to domination would be the same in all three cases. However, these facts would often be the same in any case brought by any plaintiff against any given business, since the domination factors tend to implicate general business operations. Whether a business has adhered to corporate formalities ("*i.e.*, issuance of stock, election of directors, keeping of corporate records," *Citibank*, 714 F. Supp. 3d at 440) is not likely to change, regardless of whether that business is sued by an employee for employment law violations, or sued by a customer for a product defect. Simply put, a business either issues stock and elects directors, or it does not. Yet, one would not reasonably suggest that an employment action and product liability action must be heard together merely because the facts pertaining to the business's general operations would be the same. Consolidating those otherwise unrelated claims would be highly likely to cause juror confusion, with few gains in efficiency.

By contrast, the "fraud or wrong" element is more closely related to the specific cause of action that a plaintiff alleges caused its harm, and thus less likely to remain constant. Nevertheless, because the three cases at issue are all breach of contract actions brought by unpaid suppliers, the relevant "fraud or wrong" is apparently the same—that the corporate defendant failed to pay its bills.[24] Putting aside whether this is sufficient to satisfy the "fraud or wrong" element, analyzing

---

[23] Some courts apply a standard under which the "fraud or wrong" "can be . . . outright fraud, or another type of wrong, such as a breach of a legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights." *See, e.g.*, *Citibank*, 714 F. Supp. 3d at 444. However, the source of this standard is a Second Circuit case that predates *Passalacqua* (which, as discussed, contemplates negligent harms), *see Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987), the Court has not found any New York appellate court cases citing this standard, and the inclusion of "breach of a legal duty" appears to contradict the principle that a simple breach of contract does not suffice, *Etage*, 211 A.D.3d at 634, *Am. Federated Title*, 716 F. App'x at 28.

[24] The complaints do not indicate which factual allegations the plaintiffs intend to rely on to reach the conclusion that a fraud or wrong was committed for purposes of veil piercing. The only allegations that appear to be relevant to this prong are those alleging that the invoices were not paid.

this question in three separate cases may seem duplicative or appear to risk contradictory outcomes.

On the other hand, New York law makes clear that the facts justifying veil piercing must relate to the specific transaction, plaintiff, and shareholder-defendant at issue. *Citibank*, 714 F. Supp. 3d at 439–40, 443–45; *Cortlandt*, 96 N.E.3d at 203; *Triemer v. Bobsan Corp.*, 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999); *DePetris v. Traina*, 211 A.D.3d 939, 941–42 (N.Y. App. Div. 2d Dep't 2022); *Tabchouri*, 219 A.D.3d at 532–33; *TNS Holdings*, 703 N.E.2d at 751 ("Those seeking to pierce a corporate veil . . . bear a heavy burden of showing that the corporation was dominated *as to the transaction attacked*." (emphasis added)). Thus, except for the domination factors that pertain to general business operations, the plaintiffs would need to establish both (1) the remaining domination factors, and (2) a fraud or wrong, in a transaction-specific way. For example, for domination, the plaintiffs would need to show that: the individual defendant, rather than some other employee, placed the orders; the individual defendant had complete control with respect to the orders; the corporation was inadequately capitalized; and/or the individual and corporate defendants' assets were commingled with respect to payments for specific orders. *Triemer*, 70 F. Supp. 2d at 376–77; *Americore Drilling & Cutting, Inc. v. EMB Contracting Corp.*, 198 A.D.3d 941, 946–47 (N.Y. App. Div. 2d Dep't 2021). For the fraud or wrong prong, the plaintiffs would need to show that the individual defendant intended to cause some injustice or wrong to each of them, in the context of each specific transaction, and used that domination to do so. *Triemer*, 70 F. Supp. 2d at 376–77; *Americore Drilling*, 198 A.D.3d at 947. One can imagine ways in which the relevant facts for either of these prongs might differ depending upon the contract at issue, such as if the corporation was financially sound when earlier orders were placed, but became inadequately capitalized before placing later orders. In short, the parties' dispositive motions will need to

- 38 -

specifically discuss all twenty-six contracts and the factual circumstances surrounding them, regardless of whether these actions are consolidated.

To the extent that the facts for some of these transactions, or plaintiffs, might be the same, this duplication would not be particularly burdensome for the parties. The parties can simply reuse the same research and arguments, but change the dates, plaintiffs' names, and citations to the three pleadings. Indeed, it is unclear whether, upon consolidation, the plaintiffs intend to file a consolidated amended complaint to avoid this.

For the court(s), there may be some duplication of efforts in adjudicating these motions, but the costs for judicial efficiency would be minor. The federal courts in New York routinely address veil piercing arguments under New York law. Moreover, there does not appear to be anything particularly novel or complex about the veil piercing relief sought here, making it unlikely that the courts would reach contradictory outcomes. Any concerns regarding duplicated efforts or risk of inconsistent outcomes could be mitigated by reassigning all three actions to the same District Court but maintaining their severance, or referring the motions to dismiss to this Court for report and recommendation, as it is already assigned to all three actions. To that end, this Court has already been referred several of the other motions in these actions, thus allaying concerns about duplicated efforts or inconsistent outcomes with respect to those motions. Finally, as discussed below, any losses in efficiency caused by separate consideration of these factual and legal questions are likely otherwise recouped, or else outweighed by other concerns.

First, many of the factual and legal questions presented during dispositive motion practice, and at trial, will not be duplicative at all. For example, the motions for default judgment against Jetax will examine the liability of the corporation with respect to each individual contract, and damages will be separately calculated for each. *See, e.g.*, *Xiamen*, 2024 WL 5399245, at *15 &

n.29 (on motion for default judgment against three different defendant corporations brought by one supplier for failure to pay invoices, engaging in fact-laden analysis for each of the twenty-seven breach of contract actions to determine whether each adequately alleged a *prima facie* case and established damages with reasonable certainty). There is no clear reason why it would be necessary, or more efficient, to address all of the breach of contract actions in a singular motion, or in a singular trial. To be sure, the plaintiffs are different companies and there is no indication that they are related to one another. Moreover, the orders, and the resulting contracts, are all different—the quantities, sums, payments, shipment dates, and invoice numbers all differ. The factual circumstances surrounding the placement of these orders presumably also differ (for example, the date on which a given phone call was placed, and who of the plaintiffs' employees were spoken to). Put simply, while all three cases involve breach of contract actions brought by suppliers for unpaid bills, there is no actual factual overlap between these cases, aside from the very limited facts relevant to veil piercing—many of which remain constant for a given business.

Second, in cases like this, the insertion of additional parties often creates added complexity and confusion for courts, parties, and later, for jurors, in both pre-trial and trial contexts. *See id.* at *3, *7, *15 (examining discrepancies in documents misidentifying or conflating the relevant defendant corporations). If the five, seven, and fourteen contracts are tried separately for each plaintiff, then the jurors will easily know which contracts apply to whom—there will only be one possible plaintiff. But if the twenty-six contracts are tried together, it may become more difficult for jurors to match the specific contracts to the applicable plaintiffs. The added complexity of discerning which manufacturing company each order was placed with, which company shipped a particular order on which date, and which company received a particular partial payment (as opposed to a company that received no partial payments at all), is avoided if the actions are not

consolidated for purposes of trial. Indeed, Plaintiff's counsel seems to already be struggling with this exact problem: several of the invoices submitted in support of damages for the instant motion for default judgment are for items Defendants purchased from HGM, the plaintiff in the case Judge Choudhury dismissed. *See* Mot. Default J. Ex. 2, ECF No. 17-2. If Plaintiff's counsel, who is responsible for prosecuting these cases, is already struggling to keep track of which transactions pertain to which plaintiffs before these actions have even been consolidated, it will be even more difficult for the jurors to do so. The Court is reluctant to place higher expectations on the jurors than on counsel. In short, while some pre-trial dispositive motion practice will involve the same legal doctrines, any gains in efficiency brought about by jointly considering these doctrines would likely be lost at summary judgment and at trial, which would both become more confusing and complex. Thus, "the relative expense . . . of the single-trial . . . alternative[]" is likely the same, or higher, than the "multiple-trial alternative[]." *Johnson*, 899 F.2d at 1285 (citation omitted).

In the Court's view, the only legal issue that might give rise to "inconsistent" outcomes or duplicated efforts in the trial context is the prejudgment interest rate that would be applied to the contracts under the CISG, as there is a district court split regarding the rate that should be applied thereunder. *See, e.g.*, *Busrel Inc.*, 2022 WL 16559446, at *10–11; *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, No. 14CV10246, 2016 WL 4532911, at *4–5 (S.D.N.Y. Aug. 23, 2016); *KRAPE, S.A. v. LIK Supply, Corp.*, No. 21-CV-03742, 2022 WL 16754743, at *5–6 (E.D.N.Y. Sept. 15, 2022), *report & recommendation adopted sub nom. Krape, S.A. v. L I K Supply, Corp.*, No. 21CV3742, 2022 WL 4596747 (E.D.N.Y. Sept. 30, 2022). It is conceivable that, among these three cases, the plaintiffs may be awarded different prejudgment interest rates if these claims are adjudicated by different courts.

- 41 -

While this possibility may seem strange, this is not truly an "inconsistent" outcome. Any plaintiff bringing a CISG claim against any given defendant in this Circuit may be awarded a different prejudgment interest rate than another plaintiff bringing the same claim before a different court. The very nature of a split in authority is that courts have reached different conclusions as to a given issue. Here, under the applicable joinder rules, the plaintiffs would not have been permitted to bring a single action against these two defendants. Specifically, under Rule 20(a)(1), plaintiffs may join their claims in one action if: (1) their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; *and*" (2) the claims involve "any [common] question of law or fact." Fed. R. Civ. P. 20(a)(1) (emphasis added). Courts have repeatedly held that different contracts or loans, even when entered into with the same defendant(s), do not constitute the "same transaction or occurrence" under this standard. *See, e.g.*, *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 229 (E.D.N.Y. 2013); *Eastwind Mar., S.A. v. Tonnevold Reefer 7 KS*, No. 08 CIV. 3292, 2008 WL 4831324, at *5–6 (S.D.N.Y. Nov. 10, 2008); *Dolan v. Safeco Ins. Co. of Ind.*, 297 F.R.D. 210, 212 (E.D.N.Y. 2014). Thus, the possibility of these plaintiffs being awarded different prejudgment interest rates for their CISG claims not only existed, but was necessary, from the outset.

From a judicial efficiency perspective, while the conclusions reached regarding the applicable prejudgment interest rate under the CISG differ, the analysis required to reach that conclusion is fairly simple, typically spanning a mere handful of paragraphs. *See, e.g.*, *Busrel Inc.*, 2022 WL 16559446, at *10–11; *Shantou Real Lingerie*, 2016 WL 4532911, at *4–5; *KRAPE*, 2022 WL 16754743, at *5–6. This is not a particularly burdensome task for the experienced District Courts assigned to these cases. Moreover, as with the veil piercing issue, any inefficiency caused by the consideration of the applicable prejudgment interest rate under the CISG is overborne by

the countervailing concerns of juror confusion and increased complexity should these cases be jointly tried, and the inefficiencies that are likely to result from that. Any inefficiencies stemming from duplicative consideration of the applicable prejudgment interest rate under the CISG could also be resolved by transferring the three cases to one District Court, while maintaining their severance, though the Court does not find this necessary.

While the parties jointly seek consolidation, their motion is one-and-a-half pages in length and provides no basis in law or in fact as to why consolidation of these actions in full would be useful, efficient, or prudent. *See* Mot. Consolidate, ECF No. 20. Rather, the motion says little more than the relief it seeks. *Id.* Absent any persuasive arguments from the parties, and, indeed, absent any arguments at all, there is no clear basis for consolidating these cases to create what would effectively be a miniature class action for three suppliers, despite there being zero factual overlap between these contracts. *Cf. Johannes*, 969 F. Supp. 2d at 288 ("[I]t is not this Court's obligation to make a party's arguments for it or 'fill in the blanks' on that party's behalf." (citations omitted)). The few legal and factual issues that may result in duplicative efforts are outweighed by other concerns, and the majority of the duplicative time expenditures for the parties would arise in the discovery context, a burden from which the parties have already been relieved.

In sum, consolidation "should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin*, 175 F.3d at 130. The parties have provided no reasons why those interests are served here, and, having considered the applicable factors, *see Johnson*, 899 F.2d at 1285, compelling reasons do not appear from the face of the record, *Hall*, 584 U.S. at 77 ("District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases."). Thus, the Court respectfully recommends that the parties' motion to consolidate be DENIED, or, in the

alternative, that it be GRANTED IN PART for purposes of reassigning the three cases to the same District Court, while maintaining their severance.

Lastly, as discussed in the factual background set forth above regarding *Master for Clothes*, the Court is mindful that the parties have begun dispositive motion practice but that the case cannot properly proceed before this Court, as the defaulting defendant cannot consent to the Court's jurisdiction in accordance with 28 U.S.C. § 636(c). *Tri-Servs., Inc.*, 33 F.3d at 933 (holding that actions in which a defendant has defaulted cannot be heard by a Magistrate Judge pursuant to 28 U.S.C. 636(c) because consent cannot be obtained from all parties); *Ideavillage*, 2021 WL 1987382, at *2 ("The law is clear . . . that a magistrate judge cannot enter default judgment against a party absent the defaulting party's consent to the jurisdiction of the magistrate judge to enter final judgment." (collecting cases)). As such, the Clerk of Court is hereby directed to assign a District Judge to *Master for Clothes Manufacturing and Embroidery v. Jetax Inc.*, 24-CV-2409-ST (E.D.N.Y.).

## II.    Motion for Default Judgment.

The Court next considers Plaintiff's motion for default judgment against the corporate defendant, Jetax. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE, with leave to refile a procedurally compliant motion once litigation has concluded against the appearing defendant.

### a.    *Local Civil Rules 55.2 and 7.1.*

As a threshold matter, so long as subject matter jurisdiction is properly had, courts addressing motions for default judgment generally begin by examining whether the procedural prerequisites applicable to Rule 55(b) motions have been satisfied. *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330; *Mulligan Funding*, 741 F. Supp. 3d at 11–14.

Under Rule 55(b), after obtaining a certificate of default from the Clerk of Court, a plaintiff may request the entry of default judgment from the Clerk if the claim is for a sum certain, or, in all other cases, from the Court. Fed. R. Civ. P. 55(b). Under Local Civil Rule 55.2, the documents that a plaintiff must submit depend on whether the plaintiff has requested a default judgment from the Clerk or the Court. Loc. Civ. R. 55.2 (effective July 1, 2024). For the latter, the plaintiff must submit, in pertinent part: (1) an affidavit showing that the Clerk has entered default under Local Civil Rule 55.1; (2) the papers required by Local Civil Rule 7.1, including a memorandum of law; (3) a proposed order detailing the proposed judgment to be entered; (4) a certificate of service stating that all documents in support of the request for default judgment have been personally served on, or mailed to the last known business address of, the party against whom default judgment is sought; and (5) a statement of damages, sworn or affirmed to by one or more people with *personal* knowledge, showing the proposed damages and the basis for each element thereof, including interest, attorney's fees, and costs. *Id.*

Here, Plaintiff has moved the Court for the entry of default judgment under Rule 55(b)(2), Mot. Default J. at 1, ECF No. 17, as it must, since the damages are not for a sum certain.[25]

---

[25] In addition to the sums under the relevant contracts, the Complaint seeks prejudgment interest at a rate of nine percent, as well as "a monetary judgment . . . to remedy the Plaintiff's lost business opportunity and profits as a result of the defendants' breach of contract which shall be determined upon a hearing with the help of experts." Compl. ¶¶ 41–43. This is far too vague to allege a sum certain, *Borja v. MSK Rest. Corp.*, No. 22 CIV. 6178, 2025 WL 951402, at *5 (E.D.N.Y. Mar. 13, 2025), *report & recommendation adopted sub nom. Borja v. MSK Resturant Corp.*, No. 22-CV-6178, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025), *Tene v. Neuehaus Studios Inc.*, No. 23CV2040, 2024 WL 1270816, at *2 (E.D.N.Y. Mar. 26, 2024), *report & recommendation adopted*, Docket Order (E.D.N.Y. Sept. 20, 2024), and, as discussed, the applicable prejudgment interest rate under the CISG is an open question of law that Plaintiff has failed to address, *see, e.g.*, *Busrel Inc.*, 2022 WL 16559446, at *10–11, *Shantou Real Lingerie*, 2016 WL 4532911, at *4–5, *KRAPE*, 2022 WL 16754743, at *5–6.

Plaintiff's counsel's affirmation unquestionably abandons the requests for lost profits and interest. *See* Att'y Affirmation ¶¶ 6, 10, 23, ECF No. 17. However, Plaintiff's proposed Order provides blank fields for the Court to award interest and costs, *see* Proposed Order, ECF No. 17-6, neither of which find documentary or argumentative support in Plaintiff's motion papers. While there is little Second Circuit caselaw clearly defining what constitutes a sum certain, "[a] claim is not for a 'sum certain' unless no doubt remains as to the amount to which a plaintiff is entitled." 10 Moore's Federal Practice - Civil § 55.20 (2025). Even assuming Plaintiff abandoned all alleged categories of damages except the sums under the applicable contracts, many doubts remain here. Indeed, Plaintiff's documentation includes multiple invoices from a case that is not even before this Court, *see* Mot. Default J. Ex. 2,

Plaintiff's notice of motion states that, in support thereof, Plaintiff relies on the attached attorney affirmation. *Id.* Under Local Civil Rules 55.2 and 7.1, however, a party may not simply forgo a memorandum of law and rely on an affirmation. Loc. Civ. R. 55.2 (effective July 1, 2024); Loc. Civ. R. 7.1 (effective July 1, 2024); *Santander Bank, N.A. v. Bison Expedite Inc.*, No. 23-CV-6233, 2025 WL 1640545, at *3 (E.D.N.Y. Jan. 30, 2025) ("An attorney declaration or affirmation in support of a motion for default judgment—even one containing legal argument—does not take the place of a memorandum of law." (citation modified)), *report & recommendation adopted*, Docket Order (E.D.N.Y. Mar. 4, 2025); *Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.*, No. 19-CV-6070, 2024 WL 4043682, at *1 (E.D.N.Y. Sept. 4, 2024) ("An affirmation does not take the place of a memorandum of law." (citation modified)).

Even if parties were permitted to rely on affirmations containing legal argument in lieu of memoranda of law, which they plainly are not, the affirmation in question nevertheless fails to provide any legal argument regarding the relevant issues presented by this motion, of which there are many. As the Court detailed at length above, motions for default judgment present a plethora of jurisdictional, procedural, and substantive requirements, and a plaintiff must satisfy *all* of them before a default judgment will enter and damages will be awarded. Indeed, the standards set forth above are not even exhaustive where, as here, the motion presents a question under *Frow v. De La Vega*, 82 U.S. 552 (1872) regarding whether the entry of default judgment is appropriate prior to trial when fewer than all defendants have defaulted. *See, e.g.*, *Cao v. Flushing Paris Wedding Ctr. LLC*, No. 20-CV-2336, 2022 WL 18858940, at *3 (E.D.N.Y. Oct. 14, 2022), *report & recommendation adopted*, Docket Order (E.D.N.Y. Nov. 7, 2022). Thus, even if the Court were inclined to excuse Plaintiff's submission of an affirmation as a mere error in formatting, which it

_____

ECF No. 17-2, raising doubts as to the accuracy of the documentary evidence submitted to support the contractual damages sought.

is not, it cannot do so here, as Plaintiff's affirmation fails to include any of the content required by Local Civil Rule 7.1(a)(2). *See* Loc. Civ. R. 7.1(a)(2) (effective July 1, 2024) (requiring that parties cite authorities relied on in support of motion and divide motion into sections for each issue to be determined).

As the requirements for memoranda of law under Local Civil Rule 7.1(a)(2) are incorporated by reference into Local Civil Rule 55.2(a)(2), Plaintiff, by failing to submit such memorandum, has failed to comply with both. This alone warrants denial of Plaintiff's motion. *Mulligan Funding*, 741 F. Supp. 3d at 11–13 (failure to comply with Local Civil Rule 55.2 warrants denial of motion for default judgment); *Du v. Segelman*, No. 23-CV-6780 (DG) (ST), 2025 WL 1707176, at *11 (E.D.N.Y. Mar. 28, 2025) (failure to submit memorandum of law warrants denial of motion for default judgment, and collecting cases), *report & recommendation adopted*, Docket Order (E.D.N.Y. Apr. 21, 2025); *Diaz Saavedra*, 2022 WL 20655809, at *3 (same, and collecting cases); *see also Contino*, 535 F.3d at 126 ("Local rules have the force of law . . . ."). As this Court has previously explained, "failure to submit a memorandum of law is not a mere technicality." *Du*, 2025 WL 1707176, at *11; *see also Santander Bank*, 2025 WL 1640545, at *3 ("As should be obvious to a party seeking default judgment, a memorandum of law is critical for explaining why liability is established." (citation modified)). Rather, without a memorandum of law, courts would need to expend substantial resources scouring the submissions and conducting research to attempt to guess what doctrines and facts plaintiffs believe establish the elements of their claims. *Du*, 2025 WL 1707176, at *11; *see also Turner v. Desormeau*, No. 23-CV-1432, 2025 WL 36429, at *10 (E.D.N.Y. Jan. 6, 2025) ("[B]y failing to provide a proper memorandum of law, Plaintiff has furnished the Court with no basis for finding liability." (citation omitted)), *report & recommendation adopted*, Docket Order (E.D.N.Y. Jan. 22, 2025).

It is eminently reasonable for courts to require plaintiffs to brief these issues if they wish to prevail on their claims. As the First Circuit once eloquently stated, in describing the well-settled principle that perfunctory arguments are deemed waived: "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Yet, plaintiffs moving for default judgment without a memorandum of law have not mentioned a possible argument *at all*, much less a skeletal one, apparently with the expectation that courts will create the argument, the ossature, and put flesh on its bones. The Court declines Plaintiff's invitation to do so. *Johannes*, 969 F. Supp. 2d at 288 ("[I]t is not this Court's obligation to make a party's arguments for it or 'fill in the blanks' on that party's behalf." (citations omitted)). In short, a default judgment is unquestionably the easiest method by which a plaintiff can prevail on a claim. Submitting a memorandum of law is surely the bare minimum courts can ask of plaintiffs trying to achieve that end.

Plaintiff has also failed to submit a statement of damages that complies with Local Civil Rule 55.2(c). Specifically, under that rule, Plaintiff "must file a statement of damages, sworn or affirmed to by one or more people with *personal* knowledge, in support of the [motion], showing the proposed damages and the basis for each element [thereof], including interest, attorney's fees, and costs." Loc. Civ. R. 55.2(c) (emphasis added). While Plaintiff's counsel has submitted an affirmation, *see* Att'y Affirmation, ECF No. 17, counsel's only asserted basis for his knowledge is that he represents Plaintiff, *id.* ¶ 1. Thus, Plaintiff's counsel has secondhand knowledge, not personal knowledge, of the damages in this action, and cannot personally affirm them. *Credit Lyonnais*, 183 F.3d at 154–55; *Salamanca v. ABC Corp.*, No. 19CV1335, 2019 WL 8807843, at *3, *5 (E.D.N.Y. Oct. 30, 2019), *report & recommendation adopted*, No. 19CV1335, 2020 WL

2542497 (E.D.N.Y. May 18, 2020). Moreover, counsel's affirmation fails to even mention the interest or costs sought in the proposed Order, much less the basis for them. *See* Att'y Affirmation ¶¶ 6, 10, 23, ECF No. 17; *see* Proposed Order, ECF No. 17-6. This is a particularly burdensome omission here, where the applicable interest rate is an unsettled question of law. *Busrel Inc.*, 2022 WL 16559446, at *10–11; *Shantou Real Lingerie*, 2016 WL 4532911, at *4–5; *KRAPE*, 2022 WL 16754743, at *5–6. For these reasons, Plaintiff has failed to submit a compliant statement of damages in accordance with Local Civil Rule 55.2(c), warranting denial of Plaintiff's motion.

Finally, Plaintiff has failed to submit a certificate of service demonstrating that the motion papers were served on Jetax, as required by Local Civil Rule 55.2(a)(3). *See* Mot. Default J., ECF No. 17; Loc. Civ. R. 55.2(a)(3). However, Taxier, Jetax's principal, has appeared in this action with counsel and is presumably in possession of documents filed on the docket. Thus, the Court recommends excusing Plaintiff's non-compliance with this rule. *Gustavia Home, LLC v. Vaz*, No. 17CV5307, 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019) ("[T]he Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with Local Rules." (citation omitted)), *aff'd*, 824 F. App'x 83 (2d Cir. 2020) (summary order).

In sum, because Plaintiff has failed to file a memorandum of law and a proper statement of damages, Plaintiff's motion does not comply with the applicable procedural rules. Thus, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE, with leave to refile a procedurally compliant motion. However, for the reasons set forth below, Plaintiff should not be granted leave to renew its motion until litigation against the appearing defendant has concluded.

### b.  Multi-Defendant Actions with Partial Defaults.

As the Court briefly intimated above, in cases where one or more, but not all, defendants are in default, courts are faced with the question of whether an entry of default judgment against the one defendant is appropriate, despite the continued, active litigation of the case against the appearing defendants. This scenario is, in oft-repeated parlance, said to raise a question under the "*Frow* principle."

The *Frow* principle draws its name from the 1872 Supreme Court decision in *Frow v. De La Vega*. 82 U.S. 552. In that case, the plaintiff sued multiple defendants, alleging that they had jointly conspired to defraud him of title to a piece of property. *Id.* at 552–53; *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1256 (7th Cir. 1980) (discussing *Frow*'s factual and procedural background). One of the defendants failed to appear and a default judgment was entered against him. *Frow*, 82 U.S. at 553; *In re Uranium Antitrust*, 617 F.2d at 1256. The other defendants appeared and prevailed on the merits at trial. *Frow*, 82 U.S. at 553; *In re Uranium Antitrust*, 617 F.2d at 1256. The Supreme Court vacated the default judgment in a two-paragraph opinion:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.
>
> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant . . . . will not be entitled to . . . appear . . . in any way. . . . But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike— the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal. This was so expressly decided by the New York Court

> of Errors, in the case of *Clason v. Morris*. . . . : "It would be unreasonable to hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree."

*Frow*, 82 U.S. at 554 (internal citations omitted).

In the century that followed, only four Second Circuit cases cited *Frow*'s holding, three of which did so in footnotes. *Republic of China v. Am. Exp. Co.*, 190 F.2d 334, 340 n.2 (2d Cir. 1951); *Davis v. Nat'l Mortg. Corp.*, 320 F.2d 90, 92 n.2 (2d Cir. 1963); *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976); *see also Knowles-Carter v. Feyonce, Inc.*, No. 16-CV-2532, 2017 WL 11567528, at *4 (S.D.N.Y. Sept. 23, 2017) (discussing these cases). In *International Controls Corp. v. Vesco*, the last of these four cases, the Second Circuit opined, in a footnote, that "it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)," but that, "at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others." 535 F.2d at 746 n.4 (citing *Redding & Co. v. Russwine Const. Corp.*, 463 F.2d 929, 932–33 (D.C. Cir. 1972)). The "adoption of Rule 54(b)" to which the Court referred was, more specifically, the adoption of the 1961 amendment to that Rule, *see Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (citing Fed. R. Civ. P. 54(b) advisory committee notes), which allows courts to enter "a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay," Fed. R. Civ. P. 54(b).

For the 48 years following *Vesco*, the Second Circuit did not address the vitality of *Frow*, its interaction with Rule 54(b), or the standard of necessarily dependent liability the *Vesco* Court had articulated. *Hunter*, 505 F. Supp. 3d at 160; *see also Lin v. Grand Sichuan 74 St. Inc.*, No. 15-CV-2950, 2022 WL 195605, at *6 (S.D.N.Y. Jan. 21, 2022) ("The Second Circuit has not definitively ruled on how the adoption of Rule 54(b) affects the *Frow* principle."). During that

time, courts in this Circuit continued to apply *Frow*, but confusion and disagreement abounded with respect to whether it remained extant in light of *Vesco* at all, and, if so, when and how it should be applied. *Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826, 2020 WL 7643213, at *2 (E.D.N.Y. Dec. 23, 2020) ("Exactly when *Frow* applies and what it stands for . . . is not entirely clear from the opinion itself."); *Knowles-Carter*, 2017 WL 11567528, at *4 ("The contours of the precise rule in the Second Circuit are not entirely clear."); *see id.* at *5 (noting that "there remains some disagreement in this Circuit as to" when, and how, *Frow* applies); *Sec. & Exch. Comm'n v. Yin* ("*Yin II*"), No. 17-CV-972, 2023 WL 2753094, at *5 (S.D.N.Y. Mar. 31, 2023) ("[D]istrict courts within the Circuit have continued to apply *Frow* in an inconsistent manner."), *aff'd on other grounds sub nom. Sec. & Exch. Comm'n v. Su*, No. 23-575, 2023 WL 5970952 (2d Cir. Sept. 14, 2023) (summary order); *Chain v. N. E. Freightways, Inc.*, No. 16 CIV. 3371, 2020 WL 7481142, at *16 (S.D.N.Y. Dec. 18, 2020) ("The courts in this Circuit have applied *Frow* inconsistently."), *report & recommendation adopted*, No. 16 CV 3371, 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021); *Peralta v. Roros 940, Inc.*, No. 11-CV-6242, 2016 WL 1389597, at *1 (E.D.N.Y. Apr. 7, 2016) (observing that *Frow*'s prohibition against "'a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause' . . . could be read to admit no exception" but that "its holding has been restricted by subsequent generations of jurists in various degrees"). Across hundreds of pages of opinions, courts extensively debated the meaning and application of *Frow*'s two paragraphs, as well as *Vesco*'s gloss on them, reaching several different conclusions. *Hunter*, 505 F. Supp. 3d at 161–63; *Knowles-Carter*, 2017 WL 11567528, at *3–5. *Compare Yin II*, 2023 WL 2753094, at *5–7 (holding that "*Frow* retains little, if any, authority" subsequent to *Vesco*, before holding, in the alternative, that district courts' approaches to *Frow* did not apply),

*with Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 152–56 (E.D.N.Y. 2019) (discussing *Frow* as authoritative).

The differences between the numerous approaches to the *Frow* problem hinged on several key factors. There was, of course, the issue of *Frow*'s potential abrogation, and there was a reasonable argument, in light of *Vesco*'s footnote, that it was no longer good law. But even among those courts recognizing *Frow* as extent, they disagreed as to whether it narrowly applied to only those cases alleging joint liability, or more broadly to any case in which a default judgment might, in some way, logically conflict with the decision on the merits after trial. To be sure, certain of *Frow*'s sentences could reasonably be read to support either of these conclusions, and the lack of consensus on this issue seemed to stem from disagreement, or confusion, as to which of *Frow*'s sentences constituted its holding. *Compare Peralta*, 2016 WL 1389597, at *1 (concluding that *Frow*'s holding broadly prohibiting "'a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause,' . . . has been restricted by subsequent generations of jurists in various degrees"), *with Morales*, 2021 WL 7906501, at *2 (concluding that *Frow*'s holding prohibited entry of partial final judgment where "defendants were alleged to be jointly liable" but that *Frow* had recently been "extended" to "a joint and several liability case"). As with the disagreement about how narrowly or broadly *Frow* applied, in some circumstances courts applied *Frow* to delay determining both liability and damages, while in others, they applied it only to the damages inquest, on the grounds that, in certain circumstances, only the damages determination raised the specter of contradictory judgments.[26] Finally, *Frow* was, in some cases, applied prospectively, *i.e.*, to delay adjudication and entry of a final default judgment until after litigation against the appearing defendant had concluded, while, in others, it was applied

---

[26] As discussed, the substantive analysis under a Rule 55(b) motion presents two questions—liability and damages—which can be bifurcated or consolidated.

retrospectively, *i.e.*, to vacate, in hindsight, judgments that ultimately became inconsistent. *Chain*, 2020 WL 7481142, at *16–17 (discussing prospective and retrospective methods of applying of *Frow*). These factors, taken together, produced an array of approaches, eluding any possible consensus.

At the most restrictive end of the spectrum, at least one court took the view that *Frow* was likely a dead letter, having been abrogated, as the *Vesco* Court implied, by the 1961 amendment to Rule 54(b) because it expressly authorized courts to enter single-party final judgments in multi-party cases. *Yin II*, 2023 WL 2753094, at *5 ("[T]he continued application of *Frow* is doubtful following the enactment of Rule 54(b)."). Under this view, a court would always be entitled to adjudicate a default judgment motion in its entirety and enter a partial final judgment against the defaulting defendant, so long as the court "expressly determine[d] that there [wa]s no just reason for delay" as required by that rule. Fed. R. Civ. P. 54(b); *Yin II*, 2023 WL 2753094, at *4–5.

Of those courts recognizing *Frow* as good law, the most circumscribed approach held that its only extant application—in a *prospective*, pre-trial posture—was to cases alleging "true joint liability"—that is, "when a tortious act is committed by several persons acting in concert." *Lemache*, 354 F. Supp. 3d at 153 (quoting *In re Uranium Antitrust*, 617 F.2d at 1257); *see also Yin II*, 2023 WL 2753094, at *6 (referring to this as "true joint liability," and collecting cases for this approach); *Hunter*, 505 F. Supp. 3d at 161 (describing "true joint liability" as a "theory of recovery . . . [under which], as a matter of law, no one defendant may be liable unless all defendants are liable"); *Peralta*, 2016 WL 1389597, at *1 (discussing the various approaches and referring to this as "true joint liability"); *Knowles-Carter*, 2017 WL 11567528, at *4 (collecting cases); *Abbott Lab'ys*, 2020 WL 7643213, at *2 (collecting cases). These courts reasoned that, under a joint liability theory, "it is impossible for one defendant to be liable unless all other defendants are also

liable." *Lemache*, 354 F. Supp. 3d at 153. Thus, a default judgment as to one jointly liable defendant raised the specter of inconsistent judgments, if the appearing defendant ultimately prevailed on the merits, as was the case in *Frow*. *Id.*; *Bleecker v. Zetian Sys., Inc.*, No. 12 CIV. 2151, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). However, outside of the joint liability context (*i.e.*, in cases alleging joint and several liability), it would not be inconsistent for one defendant to be held liable where the other is not, and thus the rationale of *Frow*, it was said, did not apply. *Lemache*, 354 F. Supp. 3d at 153–54; *Burg v. Brunswick Hosp. Ctr. Inc.*, No. CV-85-0050, 1987 WL 19431, at *7 (E.D.N.Y. Oct. 23, 1987); *Int'l Gemmological Inst., Inc. v. Rafaeil*, No. 05 CIV.2395, 2005 WL 3880222, at *2 (S.D.N.Y. Aug. 17, 2005), *report & recommendation adopted*, No. 05 CIV. 2395, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006); *In re Uranium Antitrust*, 617 F.2d at 1257–58. As alluded to above, this approach found support in certain of *Frow*'s language, including in its having twice mentioned the "joint fraud" and "joint charge," and most notably in declaring that "[t]he true mode of proceeding where a bill makes a *joint charge* . . . is simply to enter a default and a formal decree *pro confesso*" and await the conclusion of litigation against the answering defendants. *See* 82 U.S. at 554 (emphasis added). It did not, however, find support in the broader of *Frow*'s statements, including that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal," or that a plaintiff cannot reasonably obtain a default judgment against a defendant "where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree." *See* 82 U.S. at 554; *Peralta*, 2016 WL 1389597, at *1 (referring to the former as *Frow*'s "holding" and observing that it "could be read to admit no exception"). Nevertheless, these courts held that *Frow* applied narrowly to prohibit courts from assessing liability and damages in "true

joint liability" cases until litigation had concluded against the appearing defendant. *Lemache*, 354 F. Supp. 3d at 153–54; *Peralta*, 2016 WL 1389597, at *1; *Rafaeil*, 2005 WL 3880222, at *2.

Most, although perhaps not all,[27] of these courts recognized that, in joint and several liability cases, divergent damages awards were impermissibly inconsistent. *Rafaeil*, 2005 WL 3880222, at *3 ("It is undisputed that the amount of damages that a plaintiff may recover from defaulting and non-defaulting defendants in a case based on joint and several liability should not differ." (first citing *Montcalm Publishing Corp. v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992); and then citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985))); *In re Uranium Antitrust*, 617 F.2d at 1262; *Burg*, 1987 WL 19431, at *7 ("Even in cases where liability is joint and several, because of the joint nature of the liability, under which any defendant may be held liable for the whole, it is necessary to have consistent damage awards. Otherwise, plaintiffs would be armed with a choice of damage awards against each liable defendant." (first citing *Hunt*, 770 F.2d at 147–48; then citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1234 (5th Cir.1983); and then citing *In re Uranium Antitrust*, 617 F.2d at 1262)). However, courts applying the most restrictive approach to *Frow* did not refrain from conducting a pre-trial damages inquest with respect to defaulting defendants in joint and several liability cases. *Rafaeil*, 2005 WL 3880222, at *2–3. Instead, they concluded that, if necessary, the damages award could merely be vacated and corrected with the wisdom of hindsight if it became contradictory. *Id.* at *3. These courts ostensibly did not characterize this retrospective assessment as an application of *Frow*, *id.* at *2–3 (noting that "*Frow* does not directly apply" to joint and several liability and that, for those courts applying *Frow* prospectively to delay damages determinations, "[t]he main justification for requiring such a delay has been judicial economy," *not* that it was

---

[27] *See Bleecker*, 2013 WL 5951162, at *6–7 (awarding damages in joint and several liability case without explicitly clarifying whether court would vacate such award if it became inconsistent).

required thereunder), and for good reason. Notwithstanding the confusion surrounding how broad or narrow *Frow*'s scope may be, it plainly required courts to assess, in advance, the possibility of contradiction and prospectively delay determining whatever judgments fell within its scope, not to enter, and then retrospectively vacate, judgments that a court had determined in advance could be contradictory. *Frow*, 82 U.S. at 554 (explaining that the "true mode of proceeding" in a case within its scope was "simply to enter a default and a formal decree *pro confesso* against [the defaulting defendant], and proceed with the cause upon the answers of the other defendants"). Thus, these courts apparently held that inconsistent damages awards in joint and several liability cases fell outside *Frow*'s scope, and that some other source of authority stood to prohibit such judgments.

Perhaps heeding the necessarily prospective assessment called for in *Frow*, the vast majority of courts applied *Frow* to prospectively delay damages inquests in joint and several liability cases because such judgments could become contradictory. *Peralta*, 2016 WL 1389597, at *1; *Knowles-Carter*, 2017 WL 11567528, at *4–5; *Hunter*, 505 F. Supp. 3d at 161; *see also Lemache*, 354 F. Supp. 3d at 154–55 (explaining that different wage awards as between defaulting company and appearing manager in joint and several FLSA case is a logically contradictory outcome because it would be based upon same work performed by plaintiff). While some courts concluded that this was, perhaps, not strictly required thereunder, but was instead an efficient exercise of judicial discretion, *Lemache*, 354 F. Supp. 3d at 154–55, *see Rafaeil*, 2005 WL 3880222, at *2 (collecting cases), other courts found that this delay was, in fact, required under *Frow* (*i.e.*, that *Frow* did apply to joint and several liability inquests), *Hunter*, 505 F. Supp. 3d at 161–63, *Morales*, 2021 WL 7906501, at *3, *Burg*, 1987 WL 19431, at *7. To be sure, while *Frow* itself did not involve joint and several liability, the *Frow* Court was clearly concerned with the entry of contradictory or conflicting judgments, *Chain*, 2020 WL 7481142, at *17, and divergent

- 57 -

damages determinations in this context were widely recognized to be just that. Thus, these courts applied a slightly more expansive approach, whereby *Frow* precluded determinations as to liability and damages in "true joint liability" cases, and only damages in joint and several liability cases. *Peralta*, 2016 WL 1389597, at *1; *Burg*, 1987 WL 19431, at *7; *In re Uranium Antitrust*, 617 F.2d at 1258, 1261–62; *Hunter*, 505 F. Supp. 3d at 161 (collecting cases holding that damages cannot be determined in joint and several liability cases). They did, however, continue to assess and enter default judgment with respect to *liability* in the pre-trial context, while delaying the inquest and consolidating it with the post-trial proceedings. *Peralta*, 2016 WL 1389597, at *1; *Hunter*, 505 F. Supp. 3d at 161.

Among those holding that *Frow required* courts to delay damages inquests in joint and several liability cases, a more expansive approach developed whereby they would refrain from conducting the entire inquiry, not because *Frow* strictly so required, but because doing so was "more prudent and efficient." *Lemache*, 354 F. Supp. 3d at 156; *accord Cao*, 2022 WL 18858940, at *3–4; *Kan Ming v. 2317 Omiya Sushi, Inc.*, No. 19-CV-298, 2021 WL 2457962, at *4–5 (E.D.N.Y. Apr. 5, 2021), *report & recommendation adopted sub nom. Ming Kan v. 2317 Omiya Sushi, Inc.*, No. 1:19-CV-00298, 2021 WL 2453492 (E.D.N.Y. June 16, 2021). These courts reasoned that, because a liability-only judgment is functionally of no legal effect, *see Henry*, 108 F.4th at 49, 51, *Morales*, 2021 WL 7906501, at *1–2 (referring to entry of default judgment without damages as "only . . . an administrative resolution"), determining liability while delaying damages was both inefficient for courts and of no practical benefit to plaintiffs, *Cao*, 2022 WL 18858940, at *3–4, *Kan Ming*, 2021 WL 2457962, at *4–5, *Lemache*, 354 F. Supp. 3d at 154–56, *Morales*, 2021 WL 7906501, at *3–4. This was because, as courts have widely recognized, default judgments have no law of the case effect, and thus do not assist plaintiffs in litigating their claims

against the appearing defendants. *Cao*, 2022 WL 18858940, at \*4; *Lemache*, 354 F. Supp. 3d at 155–56; *Morales*, 2021 WL 7906501, at \*4; *Hunter*, 505 F. Supp. 3d at 162. Moreover, plaintiffs cannot begin enforcing judgments and collecting until damages are determined. *Cao*, 2022 WL 18858940, at \*4; *Lemache*, 354 F. Supp. 3d at 155; *Morales*, 2021 WL 7906501, at \*3. As the liability inquiry was of no practical benefit, these courts held that there was no need to conduct two inquiries to separately determine liability and damages in joint and several liability cases, and instead exercised the discretion to delay the entire inquiry in the interests of judicial efficiency. *Knowles-Carter*, 2017 WL 11567528, at \*4 (noting that footnote in *Vesco* addressed argument that *Frow prohibited* entry of default judgment, but did not indicate that district court lacked *discretion* to defer entry of default judgment if prudent).

The problem with all of these approaches was that they hinged on a distinction between "true joint liability" and "joint and several liability"—labels which do not neatly apply to all doctrines whereby a given defendant might become obligated to pay damages. For example, the "joint" and "several" labels "can be misleading and lack[] precision" when used to refer to vicarious liability doctrines like *respondeat superior*. Restatement (Third) of Torts: Apportionment Liab. § 13 (2000). That district courts' joint-versus-several methodology lacked precision in this context was apparent because, in cases that raised the *Frow* question, courts characterized vicarious liability as joint, *Coca-Cola Refreshments USA, Inc. v. Soho Snacks, Inc.*, No. 17-CV-2092, 2019 WL 1150564, at \*1 (E.D.N.Y. Feb. 7, 2019),[28] several, *In re Uranium Antitrust*, 617 F.2d at 1257, and as distinct from joint but nevertheless not several, *Rivera v.*

---

[28] The report and recommendation in *Coca-Cola* was not ruled on because the case was voluntarily dismissed while it was being considered. Its discussion is nevertheless enlightening.

*Limassol Grocery, Corp.*, No. 16-CV-6301, 2019 WL 1320339, at *3–4 (E.D.N.Y. Jan. 4, 2019).[29]

Derivative liability doctrines like veil piercing similarly elude these labels, because, in pertinent

part, they mirror vicarious liability.[30] Under both doctrines, liability arising from a predicate harm

is imposed upon a party who has some kind of relationship with the direct wrongdoer. *J & J Sports*

*Prods., Inc. v. Nacipucha* ("*Nacipucha*"), No. 17-CV-1186, 2018 WL 2709222, at *6 (E.D.N.Y.

May 18, 2018), *report & recommendation adopted sub nom. J&J Sports Prods., Inc. v. Nacipucha*,

No. 17CV01186, 2018 WL 2709200 (E.D.N.Y. June 5, 2018). Thus, for both, the predicate harm

must be established in order for the secondary liability to stand. Vicarious Liability, 1 American

Law of Torts § 3:6 ("[A] claim of vicarious liability cannot stand when there is no primary liability

on which a claim of vicarious liability might rest."); 18 C.J.S. Corporations § 22 ("The . . .

corporate veil-piercing doctrine . . . hold[s] a shareholder, officer, or director personally liable for

an obligation of the corporation . . . [B]ecause the liability is derivative, the liability of the

shareholder cannot exceed that of the corporation."); *Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d

726, 736 (10th Cir. 2000) (same); 18 C.J.S. Corporations § 38 ("[W]ithout an underlying cause of

action creating corporate liability, evidence of an abuse of the corporate form is immaterial. Thus,

[an action] . . . to pierce the veil of the corporation to impose liability against its stockholders . . .

is dependent upon first obtaining a judgment against the corporation."); *Nacipucha*, 2018 WL

2709222, at *6 ("It is a well-settled principle that vicarious liability cannot exist without direct

liability." (citation modified)).

---

[29] The report and recommendation in *Rivera* was not ruled on because a settlement was reached while it was being considered. Its discussion is nevertheless enlightening, and it reached the same holding as *Peralta v. Roros 940, Inc.*, cited herein.

[30] The distinction between the two is whether the party upon whom liability is imposed did, or did not, participate in the predicate wrongdoing. Vicarious Liability, 1 American Law of Torts § 3:6; Restatement (Third) of Torts: Apportionment Liab. § 13 (2000). For *Frow* purposes, this distinction is not relevant.

Though a few cases imply otherwise, these doctrines are not best described as "true joint liability" under which "it is impossible for one defendant to be liable unless all other defendants are also liable" and "the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." *Lemache*, 354 F. Supp. 3d at 153 (citation omitted). An employer does not *need* to be liable under the doctrine of *respondeat superior* in order for the alleged tortfeasor, the employee, to be liable—the tort may have been committed outside the scope of employment. Only the inverse is required; the employee does *need* to be liable in order for the employer to be liable. *Nacipucha*, 2018 WL 2709222, at *6.

Recognizing this inherent interrelation, several courts held that *Frow* necessarily prohibited liability and damages determinations in *some* vicarious and derivative liability cases, on the grounds that a contrary approach would risk inconsistent judgments in certain circumstances. *Peralta*, 2016 WL 1389597, at *1–2 (holding that entry of default judgment against vicariously liable business for acts alleged to have been committed by its appearing employee would risk inconsistent judgments under *Frow*, and collecting cases); *Burg*, 1987 WL 19431, at *7 (holding that entry of default judgment against directly liable employee while litigation continued against vicariously liable employer would risk inconsistent judgments under *Frow*). These courts reasoned that, while vicarious and derivative liability fall "beyond [the scope of] joint liability," they nevertheless constitute situations "where the liability of one defendant necessarily depends upon the liability of others" in accordance with *Vesco*'s gloss on *Frow*. *Rivera*, 2019 WL 1320339, at *3 (quoting *Vesco*, 535 F.2d at 746 n.4). However, most of these courts held that the specter of inconsistent judgments was only raised when the vicariously or derivatively liable party defaulted, and the directly liable party appeared. *Micro Fines*, 2020 WL 880801, at *4; *Yin II*, 2023 WL 2753094, at *9–10, *13–14. The inverse (*i.e.*, when the directly liable party defaults and

the vicariously/derivatively liable party appears), they held, did *not* raise the specter of inconsistent judgments because the directly liable party's default simply resolved the question of the predicate liability, leaving only the question of whether vicarious or derivative liability could be properly imposed to be litigated on the merits. *Micro Fines*, 2020 WL 880801, at *4; *Yin II*, 2023 WL 2753094, at *9–10, *13–14. This, of course, was decidedly at odds with the well-recognized principle, discussed above, that default judgments have no law of the case or *res judicata* effect against the appearing parties. *See, e.g.*, *Morales*, 2021 WL 7906501, at *4; *Lemache*, 354 F. Supp. 3d at 155–56; *Kan Ming*, 2021 WL 2457962, at *4; *Cao*, 2022 WL 18858940, at *4. Perhaps unsurprisingly, then, some courts *did* allow vicariously or derivatively liable defendants to contest the predicate liability on the merits, even when the directly liable party had defaulted, with the view that they were entitled to do so and that the possibility that they might prevail raised the specter of inconsistency. *Burg*, 1987 WL 19431, at *7. To be sure, the rights of vicariously or derivatively liable defendants are certainly affected by an adverse finding with respect to the predicate liability, and there is no clear basis for barring them from contesting it on the merits. In any event, the application of *Frow* to necessarily interrelated, but not joint, liability theories like vicarious and derivative liability could be said to be a slightly more moderate approach.

Finally, the most liberal approach applied *Frow* to cases of joint and several liability to defer liability determinations even where a defendant's liability was not necessarily predicated upon that of another. *Knowles-Carter*, 2017 WL 11567528, at *4–5; *Yin II*, 2023 WL 2753094, at *6. Unlike those courts concluding that *Frow* did not necessitate this result, but that it was merely a prudent method of increasing judicial efficiency, these courts applied *Frow* in a granular way, examining whether individual factual or legal findings as to the underlying validity of the claims or defenses could differ as between the default judgment and the judgment on the merits. *E.g.*,

*Hunter*, 505 F. Supp. 3d at 162–63; *Morales*, 2021 WL 7906501, at *2–3 (holding that, where conduct of appearing and non-appearing defendants was alleged to be the same, default judgment could be inconsistent if appearing defendants prevailed on summary judgment); *Chain*, 2020 WL 7481142, at *16–18 (applying this approach retrospectively). This more granular, totality of the circumstances approach was often described as applying to situations where the defendants were "similarly situated" or had "closely related defenses." *Yin II*, 2023 WL 2753094, at *6; *accord Knowles-Carter*, 2017 WL 11567528, at *3; *Hunter*, 505 F. Supp. 3d at 162–63.

The vast majority of courts favored approaches on the more liberal end of this spectrum, whether on the grounds that such approach was mandated by *Frow*, or was simply the judicial path of least resistance. Indeed, most of the authorities cited and discussed throughout the Court's review of the *Frow* doctrine strongly support the conclusion that Plaintiff's motion for default judgment in the case at bar is premature, and should not be determined until litigation has concluded against the appearing defendant.

In 2024, however, the widespread confusion regarding the application of the *Frow* principle was, in this Court's view, largely resolved by the Second Circuit. In *Henry v. Oluwole*, the Second Circuit finally addressed, for the first time since *Vesco*, *Frow*'s vitality, putting to rest the voluminous chapters of district court discord on this issue. *See* 108 F.4th 45.

In *Henry*, the plaintiff brought claims for assault, battery, false imprisonment, emotional distress, and negligence against a doctor, as well as the hospital that employed him, stemming from an alleged sexual assault. *Id.* at 48–49. The individual defendant failed to appear, and the district court entered a default judgment with respect to liability, but deferred ruling on damages.

*Id.* In the interim, the hospital, whose liability was alleged to be "entirely derivative"[31] of the claims against the doctor, appeared and litigated the action for several years. *Id.* at 49–50, 54. Eventually, the individual defendant appeared and moved to set aside the default judgment, which the district court denied, finding that the individual defendant's default was willful and that vacating the default judgment would prejudice the plaintiff. *Id.* at 48, 50, 52–53. A trial between the plaintiff and the hospital followed, at which the individual defendant testified. *Id.* at 48, 50, 53–54. The jury found that the plaintiff had not proven by a preponderance that the sexual encounter between the plaintiff and the individual defendant was not consensual. *Id.* at 48, 50, 54–55, 62. Because the claims against the hospital were wholly derivative of the individual defendant's liability, this absolved the hospital, and judgment was entered in its favor. *Id.* at 50, 54.

Following the jury verdict, the individual defendant again moved to set aside the default judgment as to liability, arguing that the verdict was impermissibly inconsistent under *Frow*. *Id.* at 50. The district court originally denied the motion in full, reasoning that *Frow* applied only in cases of true joint liability. *Id.*; *Henry v. Bristol Hosp., Inc.* ("*Henry II*"), No. 3:13-CV-00826, 2020 WL 7773418, at *3 (D. Conn. Dec. 30, 2020). It then conducted a damages inquest, at which time it "partly reversed itself on the *Frow* question." *Henry*, 108 F.4th at 50. Specifically, the court held that the assault and battery claims were logically inconsistent with the jury verdict, but left the default judgment in place with respect to the remaining claims, reasoning that the allegations underpinning those claims were partly based on the occurrence of a sexual assault, and partly based on a confinement. *Id.* at 48–50, 53, 56.

---

[31] This appears to merely be a colloquial rather than technical label. The hospital's liability was presumably alleged to be vicarious, not derivative. Nevertheless, the Court will use the language the *Henry* Court used for purposes of this discussion.

The Second Circuit reversed, holding that, prior to the trial, the district court should have set aside the default judgment under the three *Enron Oil* factors,[32] and that, after trial, the district court should have vacated the default judgment in full as impermissibly inconsistent with the verdict under *Frow*. *Id.* at 49, 51–54, 56, 62–63.

With respect to the first issue, the Court noted that an entry of default judgment "pertain[ing] only to liability, with damages yet to be determined . . . [is] more appropriately . . . understood as an entry of default." *Id.* at 51 (citation modified). While the *Enron* factors are the same, regardless of whether a party moves to set aside an entry of default or a default judgment, the movant bears a higher burden with respect to those factors on a motion to set aside a final default judgment. *Id.* at 51–52. Thus, "when a final default judgment has not yet been entered," "there is a smaller range of permissible decisions available to a district court" in evaluating such motions. *Id.* at 52 (citation modified).

The Court held that the district court abused its discretion in declining to set aside the default "because the second and third *Enron* factors—prejudice and a meritorious defense—strongly favored lifting the default judgment even if the first factor—willfulness—weighed in the other direction." *Id.* With respect to the third factor, the Court noted that the individual defendant had, in his motion to set aside the default judgment, contended "that the 'sexual encounter' . . . had been consensual." *Id.* at 53. At trial, the hospital raised "this very defense," which it presented through the individual defendant's testimony, and "ultimately prevail[ed]." *Id.* at 53; *see also id.* at 54. The Court thus held that "there was at least doubt as to whether the default should be granted or vacated, and that doubt should have been resolved in favor of the defaulting party." *Id.* at 53

---

[32] As discussed, the *Enron* factors examine "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Henry*, 108 F.4th at 52 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). "Willfulness 'is the most significant factor' but is not dispositive." *Id.* (quoting *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)).

(quoting *Enron Oil*, 10 F.3d at 96) (citation modified). Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether *granting* a default judgment is warranted in the first instance. *See, e.g.*, *Grp. One Ltd.*, 625 F. Supp. 3d at 54–61.

With respect to the individual defendant's second motion to vacate the default judgment, the Second Circuit held that the judgment was impermissibly inconsistent with the jury verdict under *Frow*, and thus should have been vacated. *Id.* at 49, 51, 53–54, 62–63. The Court noted that its footnote in *Vesco* opining that "it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)" was merely *dicta*. *Id.* at 54 n.4 (quoting *Vesco*, 535 F.2d at 746 n.4). Instead, the Court opined that Rule 54(b), which permits the entry of final judgment against one defaulter in a multi-defendant case, only "qualif[ies] the statement in *Frow* that 'a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.'" *Id.* (quoting *Frow*, 82 U.S. at 554). The Rules are consistent with *Frow*'s principle that "if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others" because Rule 60(b) permits "court[s] to set aside a final judgment for 'any other reason that justifies relief.'" *Id.* at 54 n.4 (first quoting *Frow*, 82 U.S. at 554; and then quoting Fed. R. Civ. P. 60(b)(6)). The Court found that an inconsistent verdict under *Frow* is one such reason justifying relief. *Id.* at 54 n.4. Thus, the Court reaffirmed the *Frow* principle's continuing validity. *Id.* at 53–54.

While the Court did not explicitly analyze the district court split regarding *Frow*'s applicability to true joint liability as opposed to joint and several liability (or whatever doctrines could be arguably said to fall between the two), it applied the *Frow* principle to a case that did not allege "true joint liability." *See id.* at 50, 53–63. Indeed, the Court did not even analyze whether

- 66 -

the underlying findings of liability were consistent in the case before it, as they plainly were: while "vicarious liability cannot exist without direct liability," *Nacipucha*, 2018 WL 2709222, at \*6 (citation omitted), direct liability certainly can exist without vicarious liability. Thus, broadly viewed, the judgment imposing liability upon the individual defendant in *Henry* did not contradict a judgment absolving the hospital of liability.

But the *Henry* Court did not examine the issue of whether the judgments between these two defendants conflicted through a broad lens. Instead, the Court examined the question granularly. Specifically, because the allegations supporting a default judgment must, when credited as true, "constitute a valid cause of action" (*i.e.*, sufficiently state a claim under the standards applicable to a Rule 12(b)(6) motion to dismiss), *Henry*, 108 F.4th at 55 (quoting *Au Bon Pain*, 653 F.2d at 65), the Court examined the complaint to identify factual allegations that conflicted with the jury's factual findings, and removed them from its consideration of that question, because such allegations could not properly be credited as true, *id.* After excising the factual allegations in the complaint that conflicted with the jury verdict, the Court then examined, claim by claim, whether "the remaining well-pleaded allegations—taken as true, with reasonable inferences in [the plaintiff's] favor—suffice[d] to establish liability as a matter of law." *Id.* at 55–56 (citation modified); *see id.* 55–62 (conducting claim by claim assessment). The Court ultimately found that the remaining factual allegations did not state a claim against the individual defendant, and thus could not sustain the entry of default judgment against him. *Id.* at 56–63. In light of this inquiry and the conclusion reached, the Court's concern, in applying the *Frow* principle, was plainly whether the underlying *factual findings*, not just the broader imposition of liability, was consistent as between both categories of defendants.

A few months after *Henry*, the Second Circuit again addressed the *Frow* principle in *Moore v. Booth*, 122 F.4th 61 (2d Cir. 2024). In that case, an inmate sued five corrections officers for excessive force. *Id.* at 62–63, 70. All five officers appeared, filing answers which asserted, *inter alia*, failure to exhaust applicable administrative remedies as an affirmative defense. *Id.* at 63–64. Thereafter, one of the five officer defendants stopped communicating with counsel, and counsel filed a motion to withdraw, which was granted. *Id.* The officer, Booth, did not appear *pro se* or hire replacement counsel, and failed to participate in discovery following his counsel's withdrawal from representation. *Id.* As a sanction for non-compliance with discovery, the district court struck Booth's answer. *Id.*

In the interim, the four litigating defendants had filed a motion to dismiss the action for failure to exhaust applicable administrative remedies. *Id.* at 63–65. The district court held an evidentiary hearing and determined that the plaintiff had failed to exhaust administrative remedies, dismissing the action with prejudice with respect to the four litigating defendants. *Id.* However, because Booth's answer, including the exhaustion defense, had been struck, the district court granted plaintiff leave to seek a default judgment against Booth. *Id.* at 63, 65. The plaintiff moved for a default judgment, arguing that a default judgment was proper because exhaustion is an affirmative defense that can be waived, and the striking of Booth's answer had effectively waived the defense. *Id.* at 65. The district court granted the default judgment and awarded $50,000 in damages. *Id.* at 63, 65–66.

The Second Circuit reversed, concluding, under *Frow*, "that the district court abused its discretion when it granted a default judgment against Booth after it had already dismissed identical claims on the merits against the litigating defendants based on a defense that applied equally to Booth." *Id.* at 63. In doing so, the Court rejected the plaintiff's argument that *Frow* did not apply

- 68 -

"because the district court 'did not impose joint liability.'" *Id.* at 67. Specifically, the Court ruled that it, "along with the majority of the federal appellate courts, ha[s] held that the *Frow* principle is not limited to cases of joint liability but more generally 'prohibits a default judgment that is inconsistent with a judgment on the merits.'" *Id.* (quoting *Henry*, 108 F.4th at 53).

While the Second Circuit had not explicitly addressed the district court split regarding *Frow*'s applicability beyond true joint liability in *Henry*, the *Moore* Court adopted the approach followed by the Third, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits that "the *Frow* principle applies when the defendants are 'similarly situated' or have 'closely related defenses' even if not jointly liable." *Id.* This approach provides that, when appearing defendants successfully establish that the plaintiff has no cause of action, whether because the plaintiff has failed to state a claim or the plaintiff's claim is barred by an applicable affirmative defense, that defense generally inures to the benefit of the defaulting defendant, so long as the defaulting defendant is similarly situated in that respect (*i.e.*, that defense logically applies to the defaulting defendant). *Id.* at 67–68, 67 n.5. In adopting this approach, the *Moore* Court rejected the minority view of the Seventh and D.C. Circuits that the *Frow* principle "should be 'limited to exclusively joint liability claims or situations where there is a single res in controversy.'" *Id.* at 68 (quoting *In re Uranium Antitrust*, 617 F.2d at 1258 n.40). Notably, many of the district court decisions that, prior to *Moore*, limited the *Frow* principle to joint liability claims, or applied it only narrowly beyond that scope, cited to the Seventh Circuit's decision in *In re Uranium Antitrust*. *See, e.g.*, *Yin II*, 2023 WL 2753094, at *8 (noting that, for courts that limited *Frow* to true joint liability, "[t]he reasoning behind these rulings . . . [was] expressed in a much-cited Seventh Circuit case," and quoting *In re Uranium Antitrust*); *Miele v. Greyling*, No. 94CIV3674, 1995 WL 217554, at *3 (S.D.N.Y. Apr. 13, 1995).

After determining that the *Frow* principle applies well beyond true joint liability, the *Moore* Court considered, as a matter of first impression, "whether the *Frow* principle applies when the merits judgment was based on an affirmative defense," since affirmative defenses, unlike failures to adequately plead the *prima facie* elements of a claim, "may be waived by a defendant." 122 F.4th at 68. The Court held that the *Frow* principle does apply to affirmative defenses, adopting the approach of the Fifth Circuit, which has applied it to statute of limitations defenses. *Id.* at 69. The Court reasoned that the Fifth Circuit also adopts the majority approach to the *Frow* principle and that it similarly requires that, for a default judgment to enter, the allegations state a valid facial claim for relief. *Id.* The Court explained that, while a complaint need not allege satisfaction of affirmative defenses, the factual findings adduced through evidentiary proceedings by the appearing defendants inure to the benefit of similarly situated defaulting defendants. *Id.* at 69–70.

Applying the approach to the *Frow* principle that it had now fully articulated, the *Moore* Court held that Booth was "similarly situated" with his co-defendants, in that the exhaustion defense "applied equally to Booth." *Id.* at 63, 66. This was because the plaintiff's "claims against each of the five officer defendants were identical" in that they "arose from the same alleged incident in which all five officers allegedly participated," and thus the exhaustion that was required for all five officers was the same. *Id.* at 70. The Court thus held that the "default judgment against Booth . . . was inconsistent with the judgment on the merits in favor of" the appearing defendants, and that the district court was "required to deny the motion for a default judgment against Booth" on the basis of exhaustion. *Id.* at 66, 70.

The upshot to *Henry* and *Moore* is that they effectively abrogated decades of district court decisions narrowly interpreting the *Frow* principle. *See, e.g.*, *Yin II*, 2023 WL 2753094, at *5–10; *Micro Fines*, 2020 WL 880801, at *3–4; *Abbott Lab'ys*, 2020 WL 7643213, at *2. As a result,

*Frow* not only applies when the overarching theories of liability (*i.e.*, joint versus several) may give rise to inconsistencies, but when the granular factual determinations pertaining to elements of the *prima facie* claims and affirmative defenses may give rise to inconsistencies. Moreover, both *Henry* and *Moore* stand for the proposition that courts can exercise the discretion to defer determining both liability and damages until litigation has concluded against the appearing defendants whenever courts identify potential inconsistencies of this kind. This effectively ratified the majority approach of those district courts that found it both prudent and efficient, or even obligatory, to delay determinations as to both liability and damages when potential points of contradiction were identified in advance. *Cao*, 2022 WL 18858940, at \*3–4; *Lemache*, 354 F. Supp. 3d at 153–56; *Hunter*, 505 F. Supp. 3d at 160–63, *Knowles-Carter*, 2017 WL 11567528, at \*5–6; *Morales*, 2021 WL 7906501, at \*1–3.

As discussed, prior to *Henry* and *Moore*, most courts in this Circuit held that vicarious and derivative liability cases only raised the specter of inconsistent judgments when the vicariously or derivatively liable defendant defaulted and the directly liable defendant appeared. *See Micro Fines*, 2020 WL 880801, at \*4 (declining to apply *Frow* and distinguishing cases where appearing defendants were directly liable); *Yin II*, 2023 WL 2753094, at \*9–10, \*13–14. The situation here is the inverse. Jetax, the defaulting defendant, is alleged to be directly liable for its contractual obligations, while Taxier, the appearing defendant, is alleged to be derivatively liable under a veil piercing theory. Thus, in order for the derivative liability against Taxier to stand, the predicate liability against Jetax must be established. 18 C.J.S. Corporations § 22 ("The . . . corporate veil-piercing doctrine . . . hold[s] a shareholder, officer, or director personally liable for an obligation of the corporation . . . [B]ecause the liability is derivative, the liability of the shareholder cannot exceed that of the corporation."); 18 C.J.S. Corporations § 38 ("[W]ithout an underlying cause of

action creating corporate liability, evidence of an abuse of the corporate form is immaterial. Thus, [an action] . . . to pierce the veil of the corporation to impose liability against its stockholders . . . is dependent upon first obtaining a judgment against the corporation.").

*Henry* makes clear that, contrary to the prior approach of most courts in this Circuit, Taxier is entitled to contest at trial not only whether the veil can be pierced to hold him liable, but whether the predicate contractual liability of Jetax has been adequately established. As discussed, in *Henry*, the appearing defendant, the hospital employer, was alleged to be vicariously liable for an assault allegedly committed by the defaulting individual defendant, its employee, under a theory of *respondeat superior*. *Henry*, 108 F.4th at 48–50, 54. At trial, the hospital contested not whether there was a basis for imposing vicarious liability, but whether the predicate assault occurred. *Id.* at 53–54. The jury found that the assault had not been proven by a preponderance, thus absolving the hospital of any liability. *Id.* at 50, 54. Moreover, the Second Circuit held that these underlying factual findings inured to the benefit of the defaulting individual defendant. Consistent with *Henry*, Taxier is entitled to the same opportunity to contest the merits of the predicate liability.

In the case at bar, adjudicating the motion for default judgment against Jetax runs the risk of inconsistent judgments: if Taxier prevails at trial by contesting the predicate liability on its merits (such as by arguing that there were no contracts, or that the contracts were paid in full), an entry of default judgment against Jetax would become inconsistent, just as it did in *Henry*. Moreover, with respect to damages, Jetax might be found liable for a sum under the applicable contracts that Taxier will ultimately be entitled to contest the accuracy of at trial, potentially giving rise to inconsistent damages determinations.

Even under the district court approaches prior to *Henry* and *Moore*, there were many reasons why an adjudication of Plaintiff's motion for default judgment was premature at this

juncture. For example, as discussed, a determination of liability would have afforded Plaintiff no law of the case, *res judicata*, or collateral estoppel effect to assist in litigating the case against Taxier.[33] *Lemache*, 354 F. Supp. 3d at 155–56; *Morales*, 2021 WL 7906501, at *4; *Hunter*, 505 F. Supp. 3d at 162–63. Moreover, in the pre-*Henry* landscape, the overwhelming majority of courts held that courts must defer damages determinations in joint and several liability cases until litigation concludes against the appearing defendant. Without a damages determination, the adjudication of liability against Jetax would not produce an enforceable judgment upon which Plaintiff could begin collecting. *Henry*, 108 F.4th at 49, 51–52; *Lemache*, 354 F. Supp. 3d at 155; *Morales*, 2021 WL 7906501, at *3; *Hunter*, 505 F. Supp. 3d at 163. Moreover, for those courts holding that determinations as to both liability and damages were inappropriate when defendants were similarly situated, that same logic would apply here.

In a post-*Henry* and post-*Moore* context, however, the Court is all the more confident that such a determination is, under a direct application of the *Frow* principle, inappropriate in this case. To be sure, this case presents a situation effectively identical to that in *Henry*—the allegedly directly liable defendant has defaulted, and the party upon whom liability would be indirectly imposed has appeared. The *Henry* Court directly held that the outcome of the default judgment and the trial on the merits were impermissibly inconsistent under *Frow*, and strongly endorsed the continued vitality and broad, granular application of the *Frow* principle to potential inconsistencies. Such potential inconsistencies abundantly appear on the face of the record here. Indeed, not only would it would it be inefficient or impermissible to adjudicate these issues now, only to reverse them later should the appearing defendant prevail in contesting them later, but the

---

[33] While, as discussed, a small minority of courts held that a default judgment does resolve the issue of predicate liability and forecloses the vicariously or derivatively liable defendant from contesting it, thus effectively establishing it as the law of the case, the Court rejects this view. There is no basis for foreclosing a defendant who is directly and detrimentally affected by such finding from adjudicating it, under well-established preclusion principles.

Court is especially disinclined to do so here where Plaintiff has failed to brief the *Frow* principle at all, much less the highly analogous Second Circuit decision in *Henry*, which was decided several months before Plaintiff filed this motion. Plaintiff has wholly failed to convince the Court (and, indeed, has not even attempted to convince the Court) that it can or should recommend entry of a partial default judgment in light of these precedents, and the Court, after thoroughly examining these precedents, is not independently so convinced.

As the *Henry* Court explained, under well-established Second Circuit precedent, when determining whether the entry of default judgment is appropriate, all doubts should be resolved in favor of the defaulting party. 108 F.4th at 51. In applying the *Frow* principle in light of the jury's verdict absolving the hospital of liability, the *Henry* Court held that, "there was at least doubt as to whether the default [against the individual defendant] should be granted or vacated, and that doubt should have been resolved in favor of the defaulting party." *Id.* at 53 (quoting *Enron Oil*, 10 F.3d at 96) (citation modified).

Here, the Court has doubt as to whether default judgment can, and should, be granted at this juncture, which must be resolved in favor of the defaulting party.[34] Thus, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE, and that Plaintiff be granted leave to renew the motion only after such time as litigation has concluded against the appearing defendant.

---

[34] The Court need not address Rule 54(b), as its interaction with the *Frow* principle is still not entirely clear. For example, Rule 54(b) provides that courts "may" enter partial final judgment "only if the[y] . . . expressly determine[] that there is no just reason for delay." Fed. R. Civ. P. 54(b). This determination, however, really applies to certification for appeal, and not all partial final judgments that are entered are certified. *Matter of Energetic Tank, Inc.*, 110 F.4th 131, 148 (2d Cir. 2024), *cert. denied sub nom. Energetic Tank, Inc. v. United States*, 221 L. Ed. 2d 954 (May 5, 2025). What is clear is that, even if one applies the standard in Rule 54(b) to non-certified partial final judgments, the rule is discretionary. The Court finds that an exercise of that discretion would not be prudent here, and finds that there is a just reason for delay. Indeed, in the Court's view, inconsistency under the *Frow* principle is, in general, a just reason for delay.

### c. *Reasonable Certainty of Damages.*

Even if the Court found that *Frow*, as elucidated in *Henry* and *Moore*, did not control in this case and considered Plaintiff's motion for default judgment on its merits, its efforts would be fruitless, as Plaintiff has failed to establish damages with reasonable certainty.

First, as discussed, Plaintiff has submitted an affirmation from Plaintiff's counsel, who lacks personal knowledge of the damages in this action. *See* Att'y Affirmation, ECF No. 17; *Credit Lyonnais*, 183 F.3d at 154–55; *Salamanca*, 2019 WL 8807843, at *3, *5. While a submission of only an attorney affidavit, absent any other documentation, plainly fails to establish damages with reasonable certainty, *Credit Lyonnais*, 183 F.3d at 154–55, counsel's affirmation was not the only evidence submitted in support of damages. Plaintiff also submitted documentary evidence— namely, the invoices arising from the five transactions at issue. *See* Att'y Affirmation Ex. 2, ECF No. 17-2. However, these documents were submitted through Plaintiff's counsel as a witness, who cannot authenticate them. *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order). To be sure, the evidence submitted with a Rule 55(b) motion must be admissible in order to establish damages with reasonable certainty. *Paulino v. S & P Mini Mkt. Corp.*, --- F. Supp. 3d ---, No. 22 CIV. 8724, 2025 WL 1932906, at *3 (S.D.N.Y. July 15, 2025); *Gov't Emps. Ins. Co. v. Onyema*, --- F. Supp. 3d ---, No. 24-CV-5287, 2025 WL 1891967, at *12 (E.D.N.Y. July 9, 2025); *Burns*, 635 F. Supp. 3d at 272; *Reisman v. Ne. Power & Gas LLC*, 720 F. Supp. 3d 279, 291 (S.D.N.Y. 2024). Thus, while the documents Plaintiff submitted would be considerable for purposes of assessing liability (because *Twiqbal* plausibility is not an evidentiary assessment), they are not presently admissible for purposes of a damages inquest. *House*, 359 F. App'x at 207; *Salamanca*, 2019 WL 8807843, at *3, *5; *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Star Const. Marble & Granite, Inc.*, No. 10CV1882, 2011 WL 4458977, at *2 (E.D.N.Y. Sept.

6, 2011), *report & recommendation adopted sub nom. Trs. of Loc. 7 Tile Indus. Welfare Fund v. Star Const. Marble & Granite*, No. 10-CV-1882, 2011 WL 4440307 (E.D.N.Y. Sept. 23, 2011). As Plaintiff has submitted no admissible, considerable evidence, Plaintiff has failed to establish damages with reasonable certainty.

Even if these documents were properly considerable, Plaintiff's submissions are mathematically erroneous, thus belying any effort to characterize the damages as "reasonably certain." Plaintiff, for example, alleges and seeks $90,466.20, $78,420.60, and $84,637.80 for invoice numbers 23//2021, 36//2021, and 34//2021, respectively. Compl. ¶¶ 15, 23, 27; Att'y Affirmation Ex. 2 at 2, ECF No. 17-2. Yet, the invoices themselves reflect totals of $85,982.40, $81,778.50, and $84,470.40 for these orders. *See* Att'y Affirmation Ex. 2 at 3, 12, 15, ECF No. 17-2. By contrast, Plaintiff's alleged totals of $77,680.80 and $61,907.40 for invoice numbers 28//2021 and 32//2021, respectively, Compl. ¶¶ 11, 19, Att'y Affirmation Ex. 2 at 2, ECF No. 17-2, match the invoices submitted, *see* Att'y Affirmation Ex. 2 at 6, 9, ECF No. 17-2. Plaintiff has failed to explain why the sums sought for three of the five relevant orders do not match the prices charged on the invoices Plaintiff itself created. Plaintiff has also submitted multiple invoices from a company that is not a party to this case, without explanation. *See id.* at 19–23.

Finally, Plaintiff's submissions fail to properly support the damages sought, as the proposed Order seeks interest and costs, neither of which have been argued, and the latter of which has not been supported through documentary evidence. *See* Att'y Affirmation ¶¶ 6, 10, 23, ECF No. 17; *see* Proposed Order, ECF No. 17-6. As discussed, the applicable interest rate under the CISG is an open question of law, *Busrel Inc.*, 2022 WL 16559446, at *10–11, *Shantou Real Lingerie*, 2016 WL 4532911, at *4–5, *KRAPE*, 2022 WL 16754743, at *5–6, that Plaintiff has failed to address, and the Court will not make Plaintiff's arguments for it, *Johannes*, 969 F. Supp.

2d at 288 ("[I]t is not this Court's obligation to make a party's arguments for it or 'fill in the blanks' on that party's behalf." (citations omitted)).

As discussed, an entry of default judgment only with respect to liability, without an assessment of damages, is functionally the same as an entry of default under Rule 55(a). *Henry*, 108 F.4th at 49, 51. Such a finding has no functional utility because it does not produce a judgment upon which a plaintiff can collect, and a motion to vacate it is assessed under the same standard as a motion to vacate an entry of default under Rule 55(a). Thus, a liability-only finding does nothing to change the posture of this case or benefit Plaintiff in any way. As Plaintiff has failed to submit any admissible evidence to establish damages with reasonable certainty, and its documentation is replete with errors, the Court finds that, in addition to the three bases for denial set forth above, it would be futile to assess the corporate defendant's liability until such time as Plaintiff adequately supports its damages request.

**CONCLUSION**

For the foregoing reasons, the Court respectfully recommends as follows.

With respect to the District Court's outstanding Order to Show Cause, the Court recommends that the District Court hold that federal question jurisdiction is proper on the ground that Plaintiff's complaint facially alleges breach of contract actions under the CISG, and insufficient time has elapsed for the parties to have been considered to have consented to the application of otherwise preempted New York law.

With respect to the parties' motion for consolidation, the Court recommends that it be DENIED, or, in the alternative, that it be GRANTED IN PART for purposes of reassigning the three cases to the same District Court, while maintaining their severance, because the parties have failed to present any argument to support their motion, no basis for consolidation clearly appears on the face of the record, and consolidation for purposes of trial would increase complexity and risk juror confusion.

With respect to Plaintiff's motion for default judgment, the Court recommends that Plaintiff's motion be DENIED IN FULL WITHOUT PREJUDICE TO RENEW on all, or any, of the following four independent bases. First, Plaintiff failed to comply with Local Civil Rules 7.1(a)(2) and 55.2(a)(2) by failing to file a memorandum of law. Second, Plaintiff failed to comply with Local Civil Rule 55.2(c) by failing to submit a statement of damages sworn to by someone with personal knowledge. Third, a judgment against the defaulted defendant, even as to liability, would be premature and risk inconsistent judgments under the *Frow* principle. Fourth, Plaintiff failed to establish damages with reasonable certainty, and a judgment as to liability alone would be both inefficient and unenforceable until such defect is cured.

Finally, should Plaintiff's motion for default judgment be denied, the Court respectfully recommends that Plaintiff be granted leave to renew the motion only after litigation has concluded against the appearing defendant to avoid inconsistent judgments as to liability or damages, pursuant to the *Frow* principle.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**

                                                          _____/s/_____
                                                          Steven L. Tiscione
                                                          United States Magistrate Judge
                                                          Eastern District of New York


Dated: Central Islip, New York
         September 11, 2025

- 79 -